## COLEMAN ET AL. v. ALABAMA

No. 72.   Argued November 18, 1969—Decided June 22, 1970

*Charles Tarter,* by appointment of the Court, 394 U. S. 1011, argued the cause and filed a brief for petitioners.

*David W. Clark,* Assistant Attorney General of Alabama, argued the cause for respondent. With him on the brief was *MacDonald Gallion,* Attorney General.

MR. JUSTICE BRENNAN announced the judgment of the Court and delivered the following opinion.

Petitioners were convicted in an Alabama Circuit Court of assault with intent to murder in the shooting of one Reynolds after he and his wife parked their car on an Alabama highway to change a flat tire. The Alabama Court of Appeals affirmed, 44 Ala. App. 429, 211 So. 2d 917 (1968), and the Alabama Supreme Court denied review, 282 Ala. 725, 211 So. 2d 927 (1968). We granted certiorari, 394 U. S. 916 (1969). We vacate and remand.

Petitioners make two claims in this Court. First, they argue that they were subjected to a station-house lineup in circumstances so unduly prejudicial and conducive to irreparable misidentification as fatally to taint Reynolds' in-court identifications of them at the trial. Second, they argue that the preliminary hearing prior to their indictment was a "critical stage" of the prosecution and that Alabama's failure to provide them with appointed counsel at the hearing therefore unconstitutionally denied them the assistance of counsel.

I [1]

The lineup of which petitioners complain was conducted on October 1, 1966, about two months after the assault and seven months before petitioners' trial. Petitioners concede that since the lineup occurred before *United States* v. *Wade,* 388 U. S. 218, and *Gilbert* v. *California,* 388 U. S. 263, were decided on June 12, 1967, they cannot invoke the holding of those cases requiring the exclusion of in-court identification evidence which is tainted by exhibiting the accused to identifying witnesses before trial in the absence of coun-

[1] MR. JUSTICE DOUGLAS, MR. JUSTICE WHITE, and MR. JUSTICE MARSHALL join this Part I.

4

sel. *Stovall* v. *Denno,* 388 U. S. 293, 296–301 (1967). Rather, they argue that in the circumstances here the conduct of the lineup was so unduly prejudicial as fatally to taint Reynolds' in-court identification of them. This is a claim that must be determined on the totality of the surrounding circumstances. *Stovall* v. *Denno, supra,* at 301–302; *Simmons* v. *United States,* 390 U. S. 377 (1968); *Foster* v. *California,* 394 U. S. 440 (1969).

At the trial Reynolds testified that at about 11:30 p. m. on July 24, 1966, he was engaged in changing a tire when three men approached from across the highway. One of them shot him from a short distance away. The three then ran up to within three or four feet. Reynolds arose from his stooped position and held on to his wife, who had left the car to watch him as he worked. One of the men put his hand on Mrs. Reynolds' shoulder. Reynolds testified that this was Coleman. Within a few seconds a car with its lights on approached, and the three men turned and "ran across the road . . . ." As they turned to go, Reynolds was shot a second time. He identified petitioner Stephens as the gunman, stating that he saw him "in the car lights" while "looking straight at him." Reynolds repeated on cross-examination his testimony on direct; he said he saw Coleman "face to face"; "I looked into his face," "got a real good look at him."

At the pretrial hearing on petitioners' motion to suppress identification evidence, Detective Fordham testified that he had spoken briefly to Reynolds at the hospital two days after the assault and about two weeks later, and that on neither occasion was Reynolds able to provide much information about his assailants. At the hospital he gave a vague description—that the attackers were "young, black males, close to the same age and height." Petitioners are both Negro; but Stephens was 18 and 6'2", and Coleman, 28 and 5'4½". However,

Detective Fordham also testified that at the time Reynolds gave this description he was in considerable pain, and that consequently the questioning was very brief. The detective further stated that Reynolds did not identify any of his assailants from mug shots, but it does not appear whether pictures of petitioners were among those shown him. Detective Hart testified that a lineup was held on October 1 at the request of the police. He stated that Reynolds identified petitioner Stephens spontaneously before the formal lineup even began. "[T]he six men were brought in by the warden, up on the stage, and as Otis Stephens—he didn't get to his position on the stage, which was number one, when Mr. Reynolds identified him as being one of his assailants." Reynolds gave similar testimony: "As soon as he stepped inside the door—I hadn't seen him previous to then until he stepped inside the door, and I recognized him . . . . Just as soon as he stepped up on the stage, I said, 'That man, there, is the one; he is the one that shot me.'" Reynolds also testified that he identified Coleman at the lineup before Coleman could act on a request Reynolds had made that the lineup participants speak certain words used by the attackers. Reynolds admitted that he did not tell Detective Hart of his identification until later during the lineup, and the detective stated he could not recall whether Reynolds told him of the identification before or after Coleman spoke the words.

It cannot be said on this record that the trial court erred in finding that Reynolds' in-court identification of the petitioners did not stem from an identification procedure at the lineup "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons* v. *United States, supra,* at 384. Indeed, the court could find on the evidence adduced at the suppression hearing that Reynolds' identifications were entirely based upon observations at the

time of the assault and not at all induced by the conduct of the lineup. There is no merit in the three arguments offered by petitioners for a contrary conclusion.

First, Reynolds testified that when the police asked him to go to the city jail he "took [it] for granted" that the police had caught his assailants. But the record is utterly devoid of evidence that anything the police said or did prompted Reynolds' virtually spontaneous identification of petitioners among the lineup participants as the proceeding got under way.

Petitioners next contend that the lineup was unfair because they and their codefendant were the only ones required to say the words used by one of the attackers. There is some conflict in the testimony on this point. Petitioner Stephens testified that petitioners and their codefendant were the only ones who spoke the words. Reynolds testified that not all the men in the lineup spoke them. But Detective Hart stated that all the participants spoke the words. In any case, the court could find on the evidence that Reynolds identified both petitioners before either said anything, and that therefore any failure to require the other participants to say the same words did not aid or influence his identifications.

Finally, petitioner Coleman contends that he was unfairly singled out to wear a hat though all the other participants were bareheaded. One of the attackers had worn a hat. Although the record demonstrates that Coleman did in fact wear a hat at the lineup, nothing in the record shows that he was required to do so. Moreover, it does not appear that Reynolds' identification of Coleman at the lineup was based on the fact that he remembered that Coleman had worn a hat at the time of the assault. On the contrary, the court could conclude from his testimony that Reynolds "asked them to make John Henry Coleman to take his hat off, or move it back," because he wanted to see Coleman's face more clearly.

## II [2]

This Court has held that a person accused of crime "requires the guiding hand of counsel at every step in the proceedings against him," *Powell* v. *Alabama,* 287 U. S. 45, 69 (1932), and that that constitutional principle is not limited to the presence of counsel at trial. "It is central to that principle that in addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." *United States* v. *Wade, supra,* at 226. Accordingly, "the principle of *Powell* v. *Alabama* and succeeding cases requires that we scrutinize *any* pretrial confrontation of the accused to determine whether the presence of his counsel is necessary to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself. It calls upon us to analyze whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice." *Id.,* at 227. Applying this test, the Court has held that "critical stages" include the pretrial type of arraignment where certain rights may be sacrificed or lost, *Hamilton* v. *Alabama,* 368 U. S. 52, 54 (1961), see *White* v. *Maryland,* 373 U. S. 59 (1963), and the pretrial lineup, *United States* v. *Wade, supra; Gilbert* v. *California, supra.* Cf. *Miranda* v. *Arizona,* 384 U. S. 436 (1966), where the Court held that the privilege against compulsory self-incrimination includes a right to counsel at a pretrial custodial interrogation. See also *Massiah* v. *United States,* 377 U. S. 201 (1964).

---

[2] MR. JUSTICE DOUGLAS, MR. JUSTICE WHITE, and MR. JUSTICE MARSHALL join this Part II.

8

The preliminary hearing is not a required step in an Alabama prosecution. The prosecutor may seek an indictment directly from the grand jury without a preliminary hearing. *Ex parte Campbell*, 278 Ala. 114, 176 So. 2d 242 (1965). The opinion of the Alabama Court of Appeals in this case instructs us that under Alabama law the sole purposes of a preliminary hearing are to determine whether there is sufficient evidence against the accused to warrant presenting his case to the grand jury, and, if so, to fix bail if the offense is bailable. 44 Ala. App., at 433, 211 So. 2d, at 920. See Ala. Code, Tit. 15, §§ 139, 140, 151.[3] The court continued:

"At the preliminary hearing . . . the accused is not required to advance any defenses, and failure to do so does not preclude him from availing himself of every defense he may have upon the trial of the case. Also Pointer v. State of Texas [380 U. S. 400 (1965)] bars the admission of testimony given at a pre-trial proceeding where the accused did not have the benefit of cross-examination by and through counsel. Thus, nothing occurring at the preliminary hearing in absence of counsel can substantially prejudice the rights of the accused on trial." 44 Ala. App., at 433, 211 So. 2d, at 921.

[3] A textbook, Criminal Procedure in Alabama, by M. Clinton McGee (University of Alabama Press 1954), p. 41, states:

"A preliminary hearing or examination is not a trial in its ordinary sense nor is it a final determination of guilt. It is a proceeding whereby an accused is discharged or held to answer, as the facts warrant. It seeks to determine whether there is probable cause for believing that a crime has been committed and whether the accused is probably guilty, in order that he may be informed of the nature of such charge and to allow the state to take the necessary steps to bring him to trial. Such hearing also serves to perpetuate evidence and to keep the necessary witnesses within the control of the state. It also safeguards the accused against groundless and vindictive prosecutions, and avoids for both the accused and the state the expense and inconvenience of a public trial."

This Court is of course bound by this construction of the governing Alabama law, *Kingsley International Pictures Corp.* v. *Regents,* 360 U. S. 684, 688 (1959); *Albertson* v. *Millard,* 345 U. S. 242. 244 (1953). However, from the fact that in cases where the accused has no lawyer at the hearing the Alabama courts prohibit the State's use at trial of anything that occurred at the hearing, it does not follow that the Alabama preliminary hearing is not a "critical stage" of the State's criminal process. The determination whether the hearing is a "critical stage" requiring the provision of counsel depends, as noted, upon an analysis "whether potential substantial prejudice to defendant's rights inheres in the . . . confrontation and the ability of counsel to help avoid that prejudice." *United States* v. *Wade, supra,* at 227. Plainly the guiding hand of counsel at the preliminary hearing is essential to protect the indigent accused against an erroneous or improper prosecution. First, the lawyer's skilled examination and cross-examination of witnesses may expose fatal weaknesses in the State's case that may lead the magistrate to refuse to bind the accused over. Second, in any event, the skilled interrogation of witnesses by an experienced lawyer can fashion a vital impeachment tool for use in cross-examination of the State's witnesses at the trial, or preserve testimony favorable to the accused of a witness who does not appear at the trial. Third, trained counsel can more effectively discover the case the State has against his client and make possible the preparation of a proper defense to meet that case at the trial. Fourth, counsel can also be influential at the preliminary hearing in making effective arguments for the accused on such matters as the necessity for an early psychiatric examination or bail.

The inability of the indigent accused on his own to realize these advantages of a lawyer's assistance compels

the conclusion that the Alabama preliminary hearing is a "critical stage" of the State's criminal process at which the accused is "as much entitled to such aid [of counsel] . . . as at the trial itself." *Powell* v. *Alabama, supra,* at 57.

### III [4]

There remains, then, the question of the relief to which petitioners are entitled. The trial transcript indicates that the prohibition against use by the State at trial of anything that occurred at the preliminary hearing was scrupulously observed.[5] Cf. *White* v. *Maryland, supra.* But on the record it cannot be said

---

[4] MR. JUSTICE BLACK, MR. JUSTICE DOUGLAS, MR. JUSTICE WHITE, and MR. JUSTICE MARSHALL join this Part III.

[5] The trial judge held a hearing two months before the trial on motions on behalf of petitioners to suppress "any evidence or discovery whatsoever obtained . . . on the preliminary hearing . . . and further any statements relating to any identification . . . during any line-up . . . ." The State conceded that the motion should be granted as to any statements of either petitioner taken by the police upon their arrests, and written and oral confessions made by them were therefore not offered at the trial. At an early stage of the hearing on the motions, the trial judge said:

"It has been my consistent ruling, and I don't know of any law to the contrary, that, on the basis of what happened at the preliminary hearing, that if a lawyer was not representing the defendant that anything that may have occurred at that preliminary which might work against the defendant, whether it be anything he said there, assuming he might have taken the stand, anything of that nature, would, on the trial of the case on the merits, be inadmissible.

"I wouldn't anticipate the State offering anything like that, but that has been my ruling on that ever since we changed some of our ways of doing things.

"It wouldn't be material from the standpoint that a man down there, when not represented by counsel on the preliminary, made some statement, said, 'I am guilty.' You know, a lot of times he might say, 'I am guilty.'

"That that would not be admissible if he weren't represented by counsel, and that sort of thing."

whether or not petitioners were otherwise prejudiced by the absence of counsel at the preliminary hearing. That inquiry in the first instance should more properly be made by the Alabama courts. The test to be applied is whether the denial of counsel at the preliminary hearing was harmless error under *Chapman* v. *California,* 386 U. S. 18 (1967). See *United States* v. *Wade, supra,* at 242.

We accordingly vacate the petitioners' convictions and remand the case to the Alabama courts for such proceedings not inconsistent with this opinion as they may deem appropriate to determine whether such denial of counsel was harmless error, see *Gilbert* v. *California, supra,* at 272, and therefore whether the convictions should be reinstated or a new trial ordered.

*It is so ordered.*

MR. JUSTICE BLACKMUN took no part in the consideration or decision of this case.

MR. JUSTICE BLACK, concurring.

I wholeheartedly agree with the conclusion in Part II of the prevailing opinion that an accused has a constitutional right to the assistance of counsel at the preliminary hearing which Alabama grants criminal defendants. The purpose of the preliminary hearing in Alabama is to determine whether an offense has been committed and, if so, whether there is probable cause for charging the defendant with that offense. If the magistrate finds that there is probable cause for charging the defendant with the offense, the defendant must, under Alabama law, be either incarcerated or admitted to bail. In the absence of such a finding of probable cause, the defendant must be released from custody. Ala. Code, Tit. 15, §§ 139–140. The preliminary hearing is therefore a definite part or stage of a criminal prosecution in Alabama,

12

and the plain language of the Sixth Amendment requires that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." Moreover, every attorney with experience in representing criminal defendants in a State which has a preliminary hearing similar to Alabama's knows—sometimes from sad experience—that adequate representation requires that counsel be present at the preliminary hearing to protect the interests of his client. The practical importance of the preliminary hearing is discussed in the prevailing opinion, and the considerations outlined there seem to me more than sufficient to compel the conclusion that the preliminary hearing is a "critical stage" of the proceedings during which the accused must be afforded the assistance of counsel if he is to have a meaningful defense at trial as guaranteed in the Bill of Rights.

I fear that the prevailing opinion seems at times to proceed on the premise that the constitutional principle ultimately at stake here is not the defendant's right to counsel as guaranteed by the Sixth and Fourteenth Amendments but rather a right to a "fair trial" as conceived by judges. While that phrase is an appealing one, neither the Bill of Rights nor any other part of the Constitution contains it. The pragmatic, government-fearing authors of our Constitution and Bill of Rights did not, and I think wisely did not, use any such vague, indefinite, and elastic language. Instead, they provided the defendant with clear, emphatic guarantees: counsel for his defense, a speedy trial, trial by jury, confrontation with the witnesses against him, and other such unequivocal and definite rights. The explicit commands of the Constitution provide a full description of the kind of "fair trial" the Constitution guarantees, and in my judgment that document leaves no room for judges either to add to or detract from these com-

mands.  I can have no part in unauthorized judicial toying with the carefully selected language of our Constitution, which I think is the wisest and best charter of government in existence.  It declares a man charged with a crime shall be afforded a lawyer to defend him even though all the judges throughout the entire United States should declare, "It is only when we think fairness requires it that an accused shall have the assistance of counsel for his defense."  For one, I still prefer to trust the liberty of the citizen to the plain language of the Constitution rather than to the sense of fairness of particular judges.

I also agree with the prevailing opinion in rejecting petitioners' claim that their in-court identification by the victim of the assault should have been suppressed.  This claim relies mainly on *Stovall* v. *Denno,* 388 U. S. 293 (1967), in which the Court held that an in-court identification could be suppressed under the Due Process Clause of the Fourteenth Amendment if it was tainted by an "unnecessarily suggestive" pretrial lineup.  I dissented in *Stovall* partly on the ground that the majority's new suppression rule was a classic example of this Court's using the Due Process Clause to write into law its own notions of fairness, decency, and fundamental justice, in total disregard of the language of the Constitution itself. But I also argued in *Stovall* that the right to counsel at a lineup, declared that same day in *United States* v. *Wade,* 388 U. S. 218 (1967), should be held fully retroactive.  *Stovall* v. *Denno,* 388 U. S., at 303.  Accordingly, I believe that petitioners in this pre-*Wade* case were entitled to court-appointed counsel at the time of the lineup in which they participated and that Alabama's failure to provide such counsel violated petitioners' rights under the Sixth and Fourteenth Amendments. However, for the reasons stated in my separate opinion in *United States* v. *Wade,* 388 U. S. 218, 243 (1967),

I believe the requirements of the Fifth and Sixth Amendments were satisfied when the Alabama prosecutors declined at trial to introduce the pretrial lineup identification into evidence. Accordingly, I concur in the conclusion in Part I of the prevailing opinion that the Alabama court did not err in permitting the courtroom identification of petitioners by the witness who had previously identified them at the lineup.

For the reasons here stated, I agree that petitioners' convictions must be vacated and the case remanded to the Alabama courts for consideration of whether the denial of counsel at the preliminary hearing was harmless error under the Court's decision in *Chapman* v. *California,* 386 U. S. 18 (1967).

Mr. Justice Douglas.

While I have joined Mr. Justice Brennan's opinion, I add a word as to why I think that a strict construction of the Constitution requires the result reached.

The critical words are: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." As Mr. Justice Black states, a preliminary hearing is "a definite part or stage of a criminal prosecution in Alabama." A "criminal prosecution" certainly does not start only when the trial starts. If the commencement of the trial were the start of the "criminal prosecution" in the constitutional sense, then indigents would likely go to trial without effective representation by counsel. Lawyers for the defense need time to prepare a defense. The prosecution needs time for investigations and procedures to make that investigation timely and telling. As a shorthand expression we have used the words "critical stage" to describe whether the preliminary phase of a criminal trial was part of the "criminal prosecution" as used in

the Sixth Amendment. But it is the Sixth Amendment that controls, not our own ideas as to what an efficient criminal code should provide. It did not take nearly 200 years of doubt to decide whether Alabama's preliminary hearing is a part of the "criminal prosecution" within the meaning of the Sixth Amendment. The question has never been reached prior to this case. We experience here the case-by-case approach that is the only one available under our "case" or "controversy" jurisdiction under Article III of the Constitution.

If we are to adhere to the mandate of the Constitution and not give it merely that meaning which appeals to the personal tastes of those who from time to time sit here, we should read its terms in light of the realities of what "criminal prosecutions" truly mean.

I was impressed with the need for that kind of strict construction on experiences in my various Russian journeys. In that nation detention *incommunicado* is the common practice, and the period of permissible detention now extends for nine months.[1] Where there is custodial interrogation, it is clear that the critical stage of the trial takes place long before the courtroom formali-

---

[1] Article 97 of the RSFSR Codes of Criminal Procedure provides:

"Confinement under guard in connection with the investigation of a case may not continue for more than two months. Only by reason of the special complexity of the case may this period be prolonged up to three months from the day of confinement under guard by a procurator of an autonomous republic, territory, region, autonomous region, or national area, or by a military procurator of a military region or fleet, or up to six months by the RSFSR Procurator or the Chief Military Procurator. Further prolongation of a period of confinement under guard may be carried out only in exceptional instances by the USSR Procurator General for a period of not more than an additional three months." Soviet Criminal Law and Procedure: The RSFSR Codes 288 (H. Berman & J. Spindler transl. 1966).

16

ties commence. That is apparent to one who attends criminal trials in Russia. Those that I viewed never put in issue the question of guilt; guilt was an issue resolved in the inner precincts of a prison under questioning by the police. The courtroom trial concerned only the issue of punishment.

Custodial interrogation is in practice—here and in other nations—so critical that we would give "criminal prosecutions" as used in the Sixth Amendment a strained and narrow meaning if we held that it did not include that phase. My Brother HARLAN in his dissent in *Miranda* v. *Arizona,* 384 U. S. 436, 513, called the Sixth Amendment cases cited by the majority of the Court the "linchpins" of the ruling that an accused under custodial interrogation was entitled to the assistance of counsel.[2] They were properly such, although the main emphasis in the *Miranda* opinion was on the use of custodial interrogation to exact incriminating statements[3] against

---

[2] Article 47 of the RSFSR Codes of Criminal Procedure provides in part:

"Defense counsel shall be permitted to participate in a case from the moment the accused is informed of the completion of the preliminary investigation and is presented with all the proceedings of the case to become acquainted with them." Soviet Criminal Law and Procedure: The RSFSR Codes, *supra,* n. 1, at 269.

[3] No nation has a monopoly on the use of this device although the present Greek Government according to the 1969 report of the Commission of Human Rights of the Council of Europe has reached a high level of efficiency in the use of torture:

"*Falanga* or bastinado has been a method of torture known for centuries. It is the beating of the feet with a wooden or metal stick or bar which, if skilfully done, breaks no bones, makes no skin lesions, and leaves no permanent and recognisable marks, but causes intense pain and swelling of the feet. The use of *falanga* has been described in a variety of situations: on a bench or chair or on a car-seat; with or without shoes on. Sometimes water has

the commands of the Fourteenth and Fifth Amendments. Like the preliminary hearing in the present case, custodial interrogation is obviously part of the "criminal prosecution" that the Sixth Amendment honors—if strict construction is our guide.

MR. JUSTICE WHITE, concurring.

I agree with MR. JUSTICE HARLAN that recent cases furnish ample ground for holding the preliminary hearing a critical event in the progress of a criminal case. I therefore join the prevailing opinion, but with some hesitation since requiring the appointment of counsel may result in fewer preliminary hearings in jurisdic-

---

been thrown over the feet and sometimes the victim has been made to run around between beatings. Victims have also been gagged.

.     .     .     .     .

"While *falanga* and severe beatings of all parts of the body are the commonest forms of torture or ill-treatment that appear in the evidence before the Sub-Commission, other forms have been described: for example, the application of electric shock, squeezing of the head in a vice, pulling out of hair from the head or pubic region, or kicking of the male genital organs, dripping water on the head, and intense noises to prevent sleep.

"*Falanga* has not only been the commonest form of torture or ill-treatment in the cases in which the Sub-Commission has been able to establish the facts to a substantial degree but also appears with great frequency in the further allegations raised in the proceedings with regard to other named detainees. The principal forms of alleged treatment—frequently several forms combined in one and the same case—are as follows in the two categories:

|  | Cases examined | Further allegations |
|---|---|---|
| *Falanga* | 23 | 53 |
| Electro-shock | 4 | 3 |
| Mock execution or threats to shoot or kill the victim | 12 | 15 |
| Other beating or ill-treatment | 26 | 17" |

European Commission of Human Rights, Report on The Greek Case, Vol. 2, pt. 1, pp. 415–416 (1969).

18

tions where the prosecutor is free to avoid them by taking a case directly to a grand jury. Our ruling may also invite eliminating the preliminary hearing system entirely.

I would expect the application of the harmless-error standard on remand to produce results approximating those contemplated by MR. JUSTICE HARLAN's separately stated views. Whether denying petitioners counsel at the preliminary hearing was harmless beyond a reasonable doubt depends upon an assessment of those factors that made the denial error. But that assessment cannot ignore the fact that petitioners have been tried and found guilty by a jury.

The possibility that counsel would have detected preclusive flaws in the State's probable-cause showing is for all practical purposes mooted by the trial where the State produced evidence satisfying the jury of the petitioners' guilt beyond a reasonable doubt. Also, it would be wholly speculative in this case to assume either (1) that the State's witnesses at the trial testified inconsistently with what their testimony would have been if petitioners had had counsel to cross-examine them at the preliminary hearing, or (2) that counsel, had he been present at the hearing, would have known so much more about the State's case than he actually did when he went to trial that the result of the trial might have been different. So too it seems extremely unlikely that matters related to bail or early psychiatric examination would ever raise reasonable doubts about the integrity of the trial.

There remains the possibility, as MR. JUSTICE HARLAN suggests, that important testimony of witnesses unavailable at the trial could have been preserved had counsel been present to cross-examine opposing witnesses or to examine witnesses for the defense. If such was the case, petitioners would be entitled to a new trial.

MR. JUSTICE HARLAN, concurring in part and dissenting in part.

If I felt free to consider this case upon a clean slate I would have voted to affirm these convictions.* But—in light of the lengths to which the right to appointed counsel has been carried in recent decisions of this Court, see *Miranda* v. *Arizona,* 384 U. S. 436 (1966); *United States* v. *Wade,* 388 U. S. 218 (1967); *Gilbert* v. *California,* 388 U. S. 263 (1967); *Mathis* v. *United States,* 391 U. S. 1 (1968); and *Orozco* v. *Texas,* 394 U. S. 324 (1969)—I consider that course is not open to me with due regard for the way in which the adjudicatory process of this Court, as I conceive it, should work. The continuing viability of the cases just cited is not directly before us for decision, and if and when such an occasion arises I would face it in terms of considerations that I have recently expressed elsewhere. See my dissenting opinion in *Baldwin* v. *New York,* decided today, *post,* p. 117, and my opinion concurring in the result in *Welsh* v. *United States,* 398 U. S. 333, 344 (1970).

---

*From the standpoint of Fourteenth Amendment due process, which is the way in which I think state cases of this kind should be judged (see, *e. g.,* my concurring opinion in *Gideon* v. *Wainwright,* 372 U. S. 335, 349 (1963)), I could not have said that the denial of appointed counsel at a preliminary hearing, carrying no consequences beyond those involved in the Alabama procedure, is offensive to the concept of "fundamental fairness" embodied in the Due Process Clause. The case would, of course, be different if the State were permitted to introduce at trial evidence collected and presented at the preliminary hearing. *A fortiori,* I would not have thought that the lack of counsel at a police "line-up" is, as held in *United States* v. *Wade,* 388 U. S. 218 (1967), a denial of due process such as to require reversal. Even from the standpoint of the Sixth Amendment, I would have found it difficult to say that the language, "In all criminal *prosecutions,* the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence" (emphasis supplied), was intended to reach such pre-indictment events. Cf. *Sanders* v. *United States,* 373 U. S. 1, 23 (1963).

Accordingly I am constrained to agree with the Court's conclusion that petitioners' constitutional rights were violated when Alabama refused to appoint counsel to represent them at the preliminary hearing. I dissent, however, from the terms of the Court's remand on this issue, as well as from the refusal to accord petitioners the benefit of the *Wade* case in connection with their police "lineup" contentions.

I

It would indeed be strange were this Court, having held a suspect or an accused entitled to counsel at such pretrial stages as "in-custody" police investigation, whether at the station house (*Miranda*) or even in the home (*Orozco*), now to hold that he is left to fend for himself at the first formal confrontation in the courtroom.

While, given the cases referred to, I cannot escape the conclusion that petitioners' constitutional rights must be held to have been violated by denying them appointed counsel at the preliminary hearing, I consider the scope of the Court's remand too broad and amorphous. I do not think that reversal of these convictions, for lack of counsel at the preliminary hearing, should follow unless petitioners are able to show on remand that they have been prejudiced in their defense at trial, in that favorable testimony that might otherwise have been preserved was irretrievably lost by virtue of not having counsel to help present an affirmative case at the preliminary hearing. In this regard, of course, as with any other erroneously excluded testimony, petitioners would have to show that its weight at trial would have been such as to constitute its "exclusion" reversible error, as well as demonstrate the actual likelihood that such testimony could have been presented and preserved at the preliminary hearing. In my opinion mere speculation that defense

counsel might have been able to do better at trial had he been present at the preliminary hearing should not suffice to vitiate a conviction. The Court's remand under the *Chapman* harmless-error rule seems to me to leave the way open for that sort of speculation.

## II

Despite my continuing disagreement with *United States v. Wade, supra,* I must dissent from the refusal to accord petitioners the benefit of the *Wade* holding, neither petitioner having been afforded counsel at the police "lineup" identification. The majority's action results from the holding in *Stovall* v. *Denno,* 388 U. S. 293 (1967), making *Wade* applicable only to lineups occurring after the date of that decision, the present lineup having taken place well before. For reasons explained in my dissent in *Desist* v. *United States,* 394 U. S. 244, 256 (1969), I can no longer follow the "retroactivity" doctrine announced in *Stovall* in cases before us on direct review. That being the situation here, I would judge the case in light of *Wade.*

The *Wade* rule requires the exclusion of any in-court identification preceded by a pretrial lineup where the accused was not represented by counsel, unless the in-court identification is found to be derived from a source "independent" of the tainted pretrial viewing. Such a determination must, in the first instance, be made by the trial court. I would therefore send the case back on this score too.

MR. CHIEF JUSTICE BURGER, dissenting.

I agree that as a matter of *sound policy* counsel should be made available to all persons subjected to a preliminary hearing and that this should be provided either by statute or by the rulemaking process. However, I cannot accept the notion that the Constitution commands

it because it is a "criminal prosecution."[1] Although MR. JUSTICE STEWART, whose opinion I join, and MR. JUSTICE HARLAN and MR. JUSTICE WHITE have each noted some of the difficulties, both on constitutional and practical grounds, with today's holding, I separately set forth additional reasons for my dissent.[2]

Certainly, as MR. JUSTICE HARLAN and MR. JUSTICE WHITE suggest, not a word in the Constitution itself either requires or contemplates the result reached; unlike them, however, I do not acquiesce in prior holdings that purportedly, but nonetheless erroneously, are based on the Constitution. That approach simply is an acknowledgment that the Court having previously amended the Sixth Amendment now feels bound by its action. While I do not rely solely on 183 years of contrary constitutional interpretation, it is indeed an odd business that it has taken this Court nearly two centuries to "discover" a constitutional mandate to have counsel at a preliminary hearing. Here there is not even the excuse that conditions have changed; the preliminary hearing is an ancient institution.

With deference, then, I am bound to reject categorically MR. JUSTICE HARLAN's and MR. JUSTICE WHITE's thesis that what the Court said lately controls over the Constitution. While our holdings are entitled to deference I will not join in employing recent cases rather than the Constitution, to bootstrap ourselves into a result, even though I agree with the objective of having counsel at preliminary hearings. By placing a premium on "recent cases" rather than the language of the Constitution, the Court makes it dangerously simple for

---

[1] The pertinent language is: "In all criminal prosecutions, the accused shall enjoy . . . the Assistance of Counsel for his defence."

[2] I concur in the conclusion that due process was not violated by the identification procedures employed here.

future Courts, using the technique of interpretation, to operate as a "continuing Constitutional convention."

I wish to make clear that my disagreement with the prevailing opinion is directed primarily at its reasoning process, rather than with the broad social and legal desirability of the result reached. I would not decide that the Constitution commands this result simply because I think it is a desirable one. Indeed, there have been many studies, including that of the American Bar Association's Criminal Justice Project, that acknowledged the wisdom of providing counsel at the preliminary hearing. ABA Project on Standards for Criminal Justice, Providing Defense Services § 5.1 (Approved Draft 1968). But this should be provided either by statute or by the rulemaking process since the Constitution does not require it. MR. JUSTICE WHITE, while joining the prevailing opinion with some reservations, belies the essence of the matter when he states that "recent cases furnish ample ground for holding the preliminary hearing a *critical event* in the progress of a criminal case." (Emphasis added.)

If the Constitution provided that counsel be furnished for every "critical event in the progress of a criminal case," that would be another story, but it does not. In contrast to the variety of verbal combinations employed by the majority to justify today's disposition, the Sixth Amendment states with laudable precision that: "In all *criminal prosecutions,* the accused shall . . . have the Assistance of Counsel." (Emphasis added.) The only relevant determination is whether a preliminary hearing is a "criminal prosecution," *not* whether it is a *"critical event* in the progress of a criminal case." By inventing its own verbal formula the prevailing opinion simply seeks to reshape the Constitution in accordance with predilections of what is deemed desirable. Constitutional interpretation is not an easy matter, but we

should be especially cautious about substituting our own notions for those of the Framers. I heed MR. JUSTICE BLACK's recent admonition on "the difference . . . between our Constitution as *written* by the Founders and an unwritten constitution to be formulated by judges according to their ideas of fairness on a case-by-case basis." *North Carolina* v. *Pearce,* 395 U. S. 711, 744 (1969) (separate opinion of BLACK, J.) (emphasis in original).

In the federal courts, and as provided by statute in most States, the three steps that follow arrest are (1) the preliminary hearing under Fed. Rule Crim. Proc. 5 (c); (2) the grand jury inquiry; and (3) the arraignment under Fed. Rule Crim. Proc. 10. We know, of course, that if the hearing officer at the preliminary hearing concludes to hold the person for possible grand jury action counsel is not permitted to attend the latter proceedings. If the grand jury returns an indictment, the accused must then enter a plea at arraignment, and at this hearing counsel is required under *Hamilton* v. *Alabama,* 368 U. S. 52 (1961).

In Alabama, as in the federal system, the preliminary hearing has been an inquiry into whether the arrested person should be discharged or whether, on the contrary, there is probable cause to submit evidence to a grand jury or other charging authority for further consideration. No verdict can flow from the hearing magistrate's determination, and a discharge, unlike an acquittal, is no bar to a later indictment. Thus it is not a trial in any sense in which lawyers and judges use that term. Moreover, the hearing magistrate cannot *indict;* he can pass only on the narrow question of whether further inquiry is warranted. Recognizing, however, that the preliminary hearing is not an unimportant step in "the progress of a criminal case," this Court has already held that disclosures of an uncounseled person at the hearing may not be used against him if he is later tried. *White* v.

*Maryland,* 373 U. S. 59 (1963). See also *Pointer* v. *Texas,* 380 U. S. 400 (1965).

Under today's holding we thus have something of an anomaly under the new "discovery" of the Court that counsel is *constitutionally* required at the preliminary hearing since counsel cannot attend a subsequent grand jury inquiry, even though witnesses, including the person eventually charged, may be interrogated in secret session. If the current mode of constitutional analysis subscribed to by this Court in recent cases requires that counsel be present at preliminary hearings, how can this be reconciled with the fact that the Constitution itself does not permit the assistance of counsel at the decidedly more "critical" grand jury inquiry?

Finally, as pointed out, the Court has already protected an accused from absence of counsel at the preliminary hearing by providing that statements of an uncounseled person are inadmissible at trial. The prevailing opinion fails to explain why that salutary—indeed drastic—remedy is no longer sufficient protection for the preliminary hearing stage, unless what the Court is doing—surreptitiously—is to convert the preliminary hearing into a discovery device. But the need for even that step is largely dissipated by the proposed amendments for pretrial discovery in criminal cases. See Judicial Conference of the United States, Committee on Rules of Practice and Procedure, Proposed Amendments to the Federal Rules of Criminal Procedure for United States District Courts (preliminary draft, Jan. 1970).

Mr. Justice Stewart, with whom The Chief Justice joins, dissenting.

On a July night in 1966 Casey Reynolds and his wife stopped their car on Green Springs Highway in Birmingham, Alabama, in order to change a flat tire. They were soon accosted by three men whose evident purpose was

armed robbery and rape. The assailants shot Reynolds twice before they were frightened away by the lights of a passing automobile. Some two months later the petitioners were arrested, and later identified by Reynolds as two of the three men who had assaulted him and his wife.

A few days later the petitioners were granted a preliminary hearing before a county judge. At this hearing the petitioners were neither required nor permitted to enter any plea. The sole purpose of such a hearing in Alabama is to determine whether there is sufficient evidence against the accused to warrant presenting the case to a grand jury, and, if so, to fix bail if the offense is bailable.[1] At the conclusion of the hearing the petitioners were bound over to the grand jury, and their bond was set at $10,000. No record or transcript of any kind was made of the hearing.

Less than a month later the grand jury returned an indictment against the petitioners, charging them with assault to commit murder. Promptly after their indictment, a lawyer was appointed to represent them. At their arraignment two weeks later, where they were represented by their appointed counsel, they entered a plea of not guilty. Cf. *Hamilton* v. *Alabama,* 368 U. S. 52. Some months later they were brought to trial, again represented by appointed counsel. Cf. *Gideon* v. *Wainwright,* 372 U. S. 335. The jury found them guilty as charged, and they were sentenced to the penitentiary.

If at the trial the prosecution had used any incriminating statements made by the petitioners at the preliminary hearing, the convictions before us would quite properly have to be set aside. *White* v. *Maryland,* 373 U. S. 59. But that did not happen in this case. Or if the prosecution had used the statement of any other wit-

---

[1] Ala. Code, Tit. 15, §§ 133–140 (1958).

ness at the preliminary hearing against the petitioners at their trial, we would likewise quite properly have to set aside these convictions. *Pointer* v. *Texas,* 380 U. S. 400. But that did not happen in this case either. For, as the prevailing opinion today perforce concedes, "the prohibition against use by the State at trial of anything that occurred at the preliminary hearing was scrupulously observed."

Nevertheless, the Court sets aside the convictions because, it says, counsel should have been provided for the petitioners at the preliminary hearing. None of the cases relied upon in that opinion points to any such result. Even the *Miranda* decision does not require counsel to be present at "pretrial custodial interrogation." That case simply held that the constitutional guarantee against compulsory self-incrimination prohibits the introduction at the *trial* of statements made by the defendant during custodial interrogation if the *Miranda* "guidelines" were not followed. 384 U. S. 436. See also *United States* v. *Wade,* 388 U. S. 218; *Gilbert* v. *California,* 388 U. S. 263. And I repeat that in this case no evidence of anything said or done at the preliminary hearing was introduced at the petitioners' trial.

But the prevailing opinion holds today that the Constitution required Alabama to provide a lawyer for the petitioners at their preliminary hearing, not so much, it seems, to assure a fair trial as to assure a fair preliminary hearing. A lawyer at the preliminary hearing, the opinion says, might have led the magistrate to "refuse to bind the accused over." Or a lawyer might have made "effective arguments for the accused on such matters as the necessity for an early psychiatric examination or bail."

If *those* are the reasons a lawyer must be provided, then the most elementary logic requires that a new preliminary hearing must now be held, with counsel

28

made available to the petitioners.  In order to provide such relief, it would, of course, be necessary not only to set aside these convictions, but also to set aside the grand jury indictments, and the magistrate's orders fixing bail and binding over the petitioners.  Since the petitioners have now been found by a jury in a constitutional trial [2] to be guilty beyond a reasonable doubt, the prevailing opinion understandably boggles at these logical consequences of the reasoning therein.  It refrains, in short, from now turning back the clock by ordering a new preliminary hearing to determine all over again whether there is sufficient evidence against the accused to present their case to a grand jury.  Instead, the Court sets aside these convictions and remands the case for determination "whether the convictions should be reinstated or a new trial ordered," and this action seems to me even more quixotic.

The petitioners have simply not alleged that anything that happened at the preliminary hearing turned out in this case to be critical to the fairness of their *trial*.  They have not alleged that they were affirmatively prejudiced at the trial by anything that occurred at the preliminary hearing.  They have not pointed to any affirmative advantage they would have enjoyed at the trial if they had had a lawyer at their preliminary hearing.

No record or transcript of any kind was made of the preliminary hearing.  Therefore, if the burden on remand is on the petitioners to show that they were prejudiced, it is clear that that burden cannot be met, and the remand is a futile gesture.  If, on the other hand, the burden is on the State to disprove beyond a reasonable doubt any and all speculative advantages that the petitioners might conceivably have enjoyed if counsel had been present at their preliminary hearing, then

---

[2] I agree with the result reached in Part I of the prevailing opinion.

obviously that burden cannot be met either, and the Court should simply reverse these convictions. All I can say is that if the Alabama courts can figure out what they are supposed to do with this case now that it has been remanded to them, their perceptiveness will far exceed mine.

The record before us makes clear that no evidence of what occurred at the preliminary hearing was used against the petitioners at their now completed trial. I would hold, therefore, that the absence of counsel at the preliminary hearing deprived the petitioners of no constitutional rights. Accordingly, I would affirm these convictions.