504 P.2d 936

STATE of Arizona, Appellee,

v.

Fred Joe DELVECCHIO, Appellant.

No. 2288.

Supreme Court of Arizona,
In Banc.

Dec. 28, 1972.

Rehearing Denied Jan. 30, 1973.

Gary K. Nelson, Atty. Gen., by William P. Dixon, Asst. Atty. Gen., Phoenix, for appellee.

E. Castro, Law Student, University of Arizona, Florence, for appellant; Fred Joe Delvecchio, in pro. per.

HAYS, Chief Justice.

Defendant, Freddie Delvecchio, appeals from the judgment and sentence of the Superior Court entered on November 17, 1970, for the crimes of attempted robbery and assault with a deadly weapon. He received concurrent sentences of five to fifteen years for each crime. Though represented by counsel at his trial, his appeal is presented in propria persona.

His defense was mistaken identity and alibi. Except for the question of the criminal's identity, the facts are undisputed. On August 20, 1970, a man entered the Dairy Creme establishment at Seventh Avenue and Roosevelt Street in Phoenix, right at closing time—11:00 P.M. The place was manned by 16-year-old Cathy Grimsley and 19-year-old Darla Barker.

The robber came up to the counter and demanded "the money" from Darla at gunpoint. She thought that he was joking. He then pointed the gun at Cathy, ordered her to "come here," and threatened to put a bullet into her head if she did not give him the money. She said that she did not have it. While this conversation was taking place, Darla picked up an aerosol can of mace and squirted it in the robber's

face. He ducked, and both girls ran into the back room where they called the police. The man fled and was not apprehended at that time.

The jury chose not to believe defendant's alibi, and found him guilty.

Defendant's principal argument is that the in-court identification was tainted by a prior unfair pictorial identification and a prior illegal lineup. As he puts it in his brief, the lineup took place "without notification to, and in the absence of appellant's court-appointed counsel, David Derickson, Deputy Public Defender." In addition, the prosecuting attorney showed Cathy a picture of defendant on the morning of the trial, shortly before she testified.

The wording of the above-quoted statement implies that counsel had already been appointed to defend the defendant before the lineup took place. This, of course, could not have been done unless a complaint had already been filed, in which case United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, would apply. At first, it was not clear whether those cases applied to pre-indictment lineups, but all doubts as to when their per se exclusionary rule takes effect were resolved by Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed. 2d 411 (1972), in which the United States Supreme Court said:

"This is not to say that a defendant in a criminal case has a constitutional right to counsel only at the trial itself. The Powell [v. Alabama, 287 U.S. 45, 53 S. Ct. 55, 77 L.Ed. 158] case makes clear that the right attaches at the time of arraignment, and the Court has recently held that it exists also at the time of a preliminary hearing. Coleman v. Alabama, supra [, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387]. But the point is that, while members of the Court have differed as to existence of the right to counsel in the contexts of some of the above cases, all of those cases have involved points of time at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."

The difficulty with defendant's contention is that the implication is not true. At the time of the lineup, no complaint had been filed, no arrest had been made, and no attorney had been appointed. We base this statement upon the record which affirmatively shows over the magistrate's signature that the complaint was filed on September 1; that the warrant of arrest issued on September 1; that the warrant was served on September 2, at which time defendant was present and the magistrate informed him of the charge and of his right to counsel; and that on September 3 defendant was again present before the magistrate who on that date appointed the Public Defender to represent the defendant. Defendant himself admits that the lineup about which he complains, took place on August 31—a day before any formal proceedings were started which might bring his case under the rule of Kirby, supra.

Kirby states that it does not mean that this gives the police a free hand in conducting suggestive lineups. These may still be attacked under the due process clause of the Fifth and Fourteenth Amendments. However, we have carefully studied the transcript and the entire record and have been unable to find any unfairness or suggestiveness in either the photographic identification or the lineup. In each case, the police were meticulously careful to separate the girls, to show only the faces in the pictorial presentation so that the clothes would not influence the choice, and to pick persons with similar characteristics for the lineup, a picture of which is included in the record. Cathy testified that defendant's picture was submitted to her with six or seven others and with no suggestion that the robber's was among them; that she had five minutes to observe the robber at the time of the crime, from only a few feet away; that at the lineup she recog-

nized defendant "the instant I walked in there"; that "I am positive he is the same person." Darla testified that the scene of the crime was well lighted; that she was standing within three feet of the robber; that she observed him for three or four minutes; that she also was shown one-half dozen pictures with only the faces visible; that all of the men in the pictures were dark-complected and about the same age; that she recognized the picture of defendant "immediately"; that she recognized defendant at the lineup "immediately"; that she was "positive" that the defendant in court was the robber. On cross-examination she was asked whether the pictures or the fact that she saw defendant in the lineup helped her identify defendant in court, and she answered, "No. I would still recognize him if I hadn't seen anything until now."

■ In our opinion, beyond a reasonable doubt, the in-court identification was untainted by the prior identification procedures.

Defendant's next contention is that because of his counsel's failure to object to the illegal lineup and the tainted in-court identification, he was denied the effective assistance of counsel.

Since we have held that the lineup was legal and not suggestive, and since we have held that the in-court identification was, beyond a reasonable doubt, untainted, the basis for this contention is absent, and this argument must fall.

■ Defendant's last argument is that the trial court erred in excluding evidence offered to prove that defendant had on a previous occasion been the victim of a mistaken identity.

The picture of defendant which the two girls had identified as that of the robber was introduced in evidence by the State. Defendant elected to take the stand in support of his alibi witnesses. The following language in the reporter's transcript illustrates the circumstances and ruling to which defendant assigns error:

"BY MR. ESTRADA: [Defense Counsel]

"Q  Freddy, see that picture there in front of you, State's Exhibit Number 1?

"A  Yes, sir.

"Q  You say this was taken when?

"A  About July 15th, somewhere around in there.

"Q  Do you know the circumstances under which it was taken?

ject, your Honor.

"MR. ZETTLER: I'm going to object, your Honor.

"That's immaterial.

"THE COURT: Objection sustained, unless it's strictly material to this case.

"MR. ESTRADA: Maybe we had better approach the bench, your Honor.

"(The following proceedings took place at the bench, out of the hearing of the jury:)

"MR. ESTRADA: Your Honor, there has been a mistake in identity concerning my client before.

"He will testify that he has been charged once before and mistakenly identified.

"THE COURT: There has been a what?

"MR. ESTRADA: There has been a mistaken identification before, and that's why this picture was taken.

"He did it voluntarily on a different charge, but he has been mistaken for somebody else before.

"MR. ZETTLER: I would object to that, your Honor.

"THE COURT: Well, that's not material to this particular case.

"It's a question that he let them take the picture on that date. We're going into collateral issues.

"If you go into that, if I permit you to do that, he will want to go on further.

"Proceed.

"(Conclusion of proceedings at bench.)

"MR. ESTRADA: I have no further questions of Mr. Delvecchio."

No offer of proof was made, but we may assume from the tenor of the argument that defendant feels that since he claims he was mistakenly identified in the instant case, he ought to have been allowed to show that this has happened before. We understand from what he said in court, and from what he argues in his brief, that the police, long before the instant case, suspected him of a crime and asked his permission to take his picture to submit to the witnesses; that the witnesses, on seeing his picture which he voluntarily permitted the police to take, refused to identify him as the criminal; and that the police then merely kept the picture in their file until the new attempted robbery. This line of reasoning overlooks the fact that there was not a prior mistaken identity; there was merely a police officer who mistakenly thought defendant had committed another crime—probably because his general description matched what he had been given. But the witnesses did not identify defendant, so there was no mistaken identity based on the picture. Even if there had been, there is some question whether evidence of a prior erroneous identification tends to prove that the identification in the instant case was erroneous. That reasoning is somewhat the same as the reasoning by which a prosecutor used to argue that prior bad acts make it more likely that the accused committed the bad act for which he is being tried. Cases are legion, that such evidence is inadmissible. We cannot accept defendant's argument that "[i]t may very well be that Appellant stands convicted for the man whom the police had thought Appellant to be on the prior occasion, because this evidence never reached the jury."

 One other point must be noted, although it is not advanced in defendant's brief—defendant was charged with and convicted of both attempted robbery and assault with a deadly weapon against the same girl, Cathy Grimsley. We have held, as recently as October 19, 1972, that two such convictions cannot stand where the acts which supply the elements of force and fear required for the robbery conviction are the same acts necessary to supply the es-

sential elements for a conviction on a charge of assault. State v. Jorgenson, 108 Ariz. 476, 502 P.2d 158 (1972). *See,* to same effect, State v. Williams, 108 Ariz. 382, 499 P.2d 97 (1972).

 These cases are the result of our interpretation of A.R.S. § 13–1641. We consider it improper to affirm both convictions even though the point has not been raised. The remedy, where the sentences are to run concurrently, is to reverse that for the lesser crime—here, the assault—thus making it unnecessary to remand for resentencing.

The judgment and sentence for attempted robbery are affirmed. The judgment and sentence for assault with a deadly weapon are reversed.

CAMERON, V. C. J., and STRUCK-MEYER, LOCKWOOD and HOLOHAN, JJ., concur.