**Leonard TAYLOR, Petitioner-Appellee,**

v.

**W. J. ESTELLE, Director, Texas Department of Corrections, Respondent-Appellant.**

**No. 74–2209.**

United States Court of Appeals, Fifth Circuit.

Jan. 13, 1975.

John L. Hill, Atty. Gen., Larry F. York, Joe B. Dibrell, Randall S. Boyd, Roland Daniel, Bert Pluymen, Asst. Attys. Gen., Austin, Tex., for respondent-appellant.

Ray J. McQuary, Staff Counsel for Inmates, Tex. Dept. of Corrections, Rosharon, Tex., for petitioner-appellee.

Before RIVES, GODBOLD and GEE, Circuit Judges.

PER CURIAM:

■ After careful consideration, we find ourselves in substantial agreement with the memorandum opinion of the experienced and able district judge, attached hereto as Appendix 1. In our opinion, the prosecuting attorney acted unfairly toward the accused when he told the victim, Schneider, that the man he had identified was not the man on trial. (See App. 84, quoted *infra* n. 1.) Again the prosecuting attorney acted unfairly toward the accused when, instead of conducting another line-up, he directed the victim's attention to the defendant alone and suggested that Schneider have him stand up, face him, turn with his back away from him, anything he desired, take as much time as he needed and state to the jury whether or not he was the man who held the

pistol on him.[1] A third grossly unfair act of the prosecuting attorney toward the accused was his argument to the jury "that he could understand this erroneous identification in the pre-trial line-up because the six negro men looked like 'six black crows on a limb.'" From the totality of the circumstances we agree with the district court "that the robbery victim's in-court identification was so impermissibly suggestive as to be conducive to irreparable misidentification."

■ For the reasons stated, we affirm the judgment of the district court, attached as Appendix 2 to this opinion, but with the modification that ninety days from the date of this Court's mandate shall be the period within which the State of Texas may re-try the petitioner, and further that he shall not be re-tried unless, upon remand, the district court is satisfied that the State of Texas can introduce substantial evidence of identification of the petitioner as the assailant of Schneider in addition to the testimony of Schneider himself. As so modified, the judgment of the district court is affirmed.

Modified and affirmed.

## APPENDIX 1

In The United States District Court
For The Northern District of Texas
Abilene Division

Leonard Glenn Taylor

vs.                CA 1–613

                        March 7, 1974

Dr. George Beto, Director,

Texas Department of Corrections

## MEMORANDUM OPINION

This habeas corpus action under 28 U.S.C. § 2254 seeks to have set aside petitioner's conviction and 25 year prison sentence for robbery in Cause No. 10,-508–A, State of Texas v. Leonard Glenn Taylor, in the 42nd District Court of Taylor County, Texas. The conviction was affirmed in Taylor v. State, Tex.Cr. App., 474 S.W.2d 207.

The grounds urged for setting aside the conviction are (1) that his in-court identification was so conducive to irreparable mistaken identification that he was denied due process of law, and (2) that he did not have adequate representation by counsel. There is not enough merit to the last contention to require any discussion of it; but the Court is of the opinion that the conviction must be set aside on the first ground.

At about 10:30 P.M. on December 23, 1969, Harry Schneider, a 23 year old college student, closed and locked up the Colonial Food Store in Abilene, Texas, where he was employed. He was alone when he went to his car parked nearby under a bright yellow dock light of the store. While opening the car door, Schneider heard a noise behind him. He turned around to face a man about two feet away. The assailant placed a pistol to Schneider's temple and said, "Get out of the light". Two other men quickly appeared from behind a trash receptacle, and the three assailants pulled the victim to the back of the store where there was no light. They then robbed him of $40.00, his wallet, his cigarette lighter, and other personal items. After dis-

---

1. Mr. Evans, the attorney who represented Taylor at the time of his trial and conviction in the Texas state court, testifying as a witness in the federal habeas hearing, explained his failure to object to Taylor's speaking out before the jury as follows:

"Once I objected to him being pointed out by the District Attorney at the table, and the District Attorney had stood up and pointed down at his head and said, 'I am talking about this man right here. This is the man I want to identify.'

"I felt like after the exchanges in the hall where the District Attorney had told the witness that he identified the wrong man, and that he would have this man speak out in the Courtroom. And, of course, I wasn't aware of that at that time. I didn't know he told him he had identified the wrong man.

"Well, I felt that there was error committed right there, when he pointed to that man, and pointed to his head and said, 'I mean this defendant right here. This is the one I am talking about.'" (App. p. 84.)

covering that Schneider could not re-open the store doors, the threesome bound and gagged him and fled.

Schneider called the police upon free-ing himself. A search of the area short-ly thereafter failed to reveal any of the three men or any instrumentalities of the crime. Schneider gave the police a description of the man who placed a gun to his head, but he was unable to de-scribe the other two men. That night the police showed him some 35 or 40 photographs of men, but he was unable to make any identification. There were no pictures of petitioner Taylor in that array. Schneider was shown 12 more photographs the next day, none of which was a picture of Taylor. Again, Schneider made no identification. On December 26th, he was shown four more photographs and this time the victim identified petitioner here as his assailant. On December the 30th, Schneider was shown another display of eight photo-graphs by the Abilene Police Depart-ment and the victim again identified pe-titioner. Taylor was arrested on Janua-ry 10, 1970, as a result of Schneider's photographic identification. He was subsequently indicted for the offense, and the trial date was set for September 14, 1970.

At the request of Taylor's trial attor-ney and by agreement with the prosecut-ing attorney, a line-up was conducted at 9:00 A.M. on the morning of the trial. Prior to that time, only a photographic identification had been made. Taylor and five other black men whom Taylor had selected were seated on a courtroom bench for the line-up. Taylor's attorney and the prosecuting attorney were both present. The lighting in the courtroom was good. Mr. Schneider looked at this line-up for three or four minutes from a distance of 28 feet through the court-room door at an angle of 30 degrees. During the line-up, Taylor, while never looking directly at the witness, turned his head to the right, left, up and down, and Schneider had an opportunity to ex-amine his facial characteristics. During that reviewing, the participants in the line-up stayed seated, and some had their heads down or they were not looking at Schneider. The prosecuting attorney asked Schneider if he had plenty of time to make his identification, and if he was sure that he could identify his assailant. Schneider replied in the affirmative to both questions. After that admonish-ment, Schneider identified one David Williams, and not Leonard Taylor, as his assailant. Subsequent to the line-up, the prosecuting attorney told Schneider that the man he identified was not the man on trial. Schneider was also told that the prosecuting attorney would have the accused speak out during the trial.

The only evidence at the trial to estab-lish Taylor's identity as the robber was testimony by Schneider to the effect that Taylor was his assailant on the oc-casion in question. The identification was predicated on the in-court viewing and on the pictures above mentioned. The picture identifications lose signifi-cance, because Schneider identified Wil-liams as his robber after he had identi-fied petitioner by the pictures. Petition-er did not testify in the robbery trial, but he offered some alibi witnesses.

During the trial Schneider was shown State's Exhibits Nos. 2, 3, 4, and 5, which were four pictures of negro males. Schneider identified these exhibits as some of the pictures that officers had shown him subsequent to the robbery. One of these exhibits was the picture of the accused. Some of those had facial hair, though the defendant did not, but all fit the general description Schneider had given the police. Also, during direct examination of the complaining witness, the following took place:

"Q. Mr. Schneider, if you would look at the defendant in this case, Leonard Glenn Taylor. You may, at your request, have him stand up, walk around, face you, turn with his back, away from you, anything which you desire. If you would, please look at him. Take as much time as you need, and state to the jury whether or not he was the man that held the pistol on you.

"MR. EVANS: Your Honor, we would object at this time to the district attorney pointing out any one individual, and ask the question generally as to whether or not this witness can identify anyone in the courtroom.

"MR. INGALSBE: Your Honor, this is the man on trial here. I think that the identification should be of this man.

"THE COURT: All right, I am going to overrule the objection and let him testify.

"MR. INGALSBE: We request that the defendant stand up, and request that he walk around in front of the table and face Mr. Schneider.

"THE WITNESS: (to the defendant) Turn sideways. The other way.

"MR. INGALSBE: And further request that he weigh the words 'Get out of the light.'

"THE DEFENDANT: Get out of the light.

"THE WITNESS: O.K.

"MR. INGALSBE: Q. All right, Mr. Schneider, is this the man that held the pistol on you or not?

"THE WITNESS: A. I wasn't sure because, with that pointing out a while ago; but the voice rasp, I won't forget that. He is definitely the man.

"Q. This Leonard Glenn Taylor is the man that held the pistol on you and robbed you?

"A. Yes, sir.

"Q. Is there any doubt whatsoever in your mind?

"A. No, sir."

On cross examination it was elicited from Schneider that he had mis-identified Williams as his assailant at the pre-trial line-up. Petitioner's counsel then had Williams stand beside the petitioner and elicited from Schneider that the petitioner's arms were longer, his hands were bigger, his skin was lighter, he was four inches taller than Williams, and that there was a difference in facial features of the two men. All of this was in a lengthy cross examination of Schneider

as to the accuracy of his pre-trial and in-court identifications and Schneider explained that he had been wrong before, but that he was quite sure of his identification he made in court. In jury argument, the prosecuting attorney stated that he could understand this erroneous identification in the pre-trial line-up because the six negro men looked like "six black crows on a limb", which was objected to by the defense and the court sustained the objection and admonished the jury to disregard the comment. No motion for mis-trial was made.

The Court is of the opinion from the totality of these circumstances that the robbery victim's in-court identification was so impermissibly suggestive as to be conducive to irreparable misidentification. Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1969); Neil v. Biggers, 409 U.S 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

This opinion will serve as the Court's findings of fact and conclusions of law.

Judgment will be entered in accordance herewith.

Signed, March 6, 1974.

(s) Leo Brewster
JUDGE

APPENDIX 2

JUDGMENT

An evidentiary hearing has been duly held after proper notice on petitioner's application for writ of habeas corpus, with petitioner and his attorney and counsel for the respondent all present in person and participating. The Court has reached the conclusion that the petitioner's conviction and sentence attacked herein by his application must be set aside for the reasons set out in its memorandum opinion filed in connection herewith.

It is accordingly decreed that the judgment of conviction and the sentence of petitioner in Cause No. 10,508–A, State of Texas v. Leonard Glenn Taylor,

in the 42nd District Court of Taylor County, Texas, be set aside, and that petitioner be remanded to the Sheriff of Taylor County, Texas, or such officer as may be lawfully designated by him, to await trial on the charge against him in such case.

It is further ordered that the State of Texas shall have a reasonable time within which to try petitioner, and that he shall be discharged in the event he is not so tried.

Nothing herein is intended to prevent petitioner from making bail according to the law of the State of Texas.

Signed, March 6, 1974.

                (s) <u>Leo Brewster</u>
                    JUDGE