JOURNAL ENTRY AND OPINION
{¶ 1} The appellant, Igor Kleybort, appeals the verdict of the Cuyahoga County Court of Common Pleas, Criminal Division, which found him guilty of abduction, in violation of R.C. 2905.02, and assault, in violation of R.C. 2903.13. For the following reasons, the verdict of the lower court is hereby affirmed.
 {¶ 2} The Cuyahoga County Grand Jury indicted Kleybort and eight co-defendants charging two counts of kidnapping and two counts of felonious assault stemming from two separate incidents. The State alleged that Peter Dranitsin, the first victim, was kidnapped and assaulted on October 25, 2000 by Kleybort and the co-defendants. The State further alleged that Dmitry Efimov, the second victim, was kidnapped and assaulted on January 25, 2001 by Kleybort and the co-defendants. Prior to trial, the State dismissed the charges against Kleybort with regard to Efimov because the evidence reflected that he was not present during the January 25, 2001 incident.
 {¶ 3} Reviewing the record, the following facts are pertinent to the instant appeal. On October 25, 2000, Peter Dranitsin was approached by one of the defendants, Dmitry Khramy, and another male named "Lazar" while Dranitsin was speaking with a friend. In time, Khramy, "Lazar" and Dranitsin drove to the residence of Mirza and Yelena Babev. While in the driveway of the Babev residence, Dranitsin was greeted by Alex Babev. A few minutes later, Andrey Tsirkot, Alex Belousov, Kleybort and "Felix" arrived. The group surrounded Dranitsin, preventing him from leaving, and a heated discussion ensued. During the discussion, Dranitsin was questioned about a vehicle being set on fire and his knowledge of those events. Dranitsin denied knowledge of the arson, but the group did not believe him.
 {¶ 4} The group ushered Dranitsin into the Babev residence and shoved him down the basement stairs. In the basement, Tsirkot and Yelena Babev repeatedly asked Dranitsin where Dmitry Efimov and another person named "Pavel" lived, the other suspected arsonists. During this time, it is alleged that Yelena Babev wielded a hunting knife and punched Dranitsin. In addition to Tsirkot and Yelena Babev, the record reflects that Kleybort, "Felix" and others were present in the basement and actively participated in the interrogation of Dranitsin.
 {¶ 5} Dranitsin stated that, while in the basement, Yelena Babev told him to call Efimov, but in order to protect Efimov, Dranitsin gave his captors the wrong phone number. As a result, Yelena Babev hit Dranitsin with the phone. In time, Dranitsin was allowed to leave the Babev residence, and Mirza and Yelena Babev drove him to his home.
 {¶ 6} After returning home, Dranitsin testified that he notified Efimov of what had occurred and warned him of the people who were searching for him. Dranitsin did not seek medical attention or contact the police concerning this incident, but he did record the particulars of the incident on his home computer.
 {¶ 7} Similar to Dranitsin, on January 25, 2001, Efimov was abducted and assaulted by the defendants who had abducted Dranitsin. Unlike Dranitsin, Efimov contacted a family friend, Michael Brumbaugh, a U.S. Park Police Officer, concerning the incident, who in turn contacted Detective Ray Adornetto of the South Euclid Police Department. Detective Adornetto investigated Efimov's allegations, and on February 6, 2001, Dranitsin and Efimov identified photos of some of their captors while at the South Euclid Police Department. As a result of Efimov's and Dranitsin's identifications, the appellant and the other co-defendants were indicted.
 {¶ 8} Kleybort presents two assignments of error for this court's review. The first assignment of error states:
 {¶ 9} "I. Appellant was denied effective assistance of counsel and his right to a fair trial when trial counsel failed to file a motion to suppress identification evidence, a motion for a separate trial, waived opening statement and failed to cross-examine any witnesses."
 {¶ 10} The appellant contends that he was denied effective assistance of counsel during trial citing to three specific incidents. In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that (1) the performance of defense counsel was seriously flawed and deficient and (2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. Strickland v. Washington
(1984), 466 U.S. 668, State v. Brooks (1986), 25 Ohio St.3d 144.
 {¶ 11} In reviewing a claim of ineffective assistance of counsel, it must be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner. State v. Smith (1985),17 Ohio St.3d 98; Vaughn v. Maxwell (1965), 2 Ohio St.2d 299.
 {¶ 12} The Supreme Court of Ohio, with regard to the issue of ineffective assistance of counsel, held in State v. Bradley (1989),42 Ohio St.3d 136, that:
 {¶ 13} "When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." Statev. Lytle (1976), 48 Ohio St.2d 391, 396-397, vacated in part on other grounds (1978), 438 U.S. 910. This standard is essentially the same as the one enunciated by the United States Supreme Court in Strickland v.Washington (1984), 466 U.S. 668. * * *
 {¶ 14} "Even assuming that counsel's performance was ineffective, this is not sufficient to warrant reversal of a conviction. `An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Cf. United States v. Morrison, 449 U.S. 361, 364-365
(1981).' Strickland, supra, at 691. To warrant reversal, `[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' Strickland, supra, at 694. In adopting this standard, it is important to note that the court specifically rejected lesser standards for demonstrating prejudice. * * *.
 {¶ 15} "Accordingly, to show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley,
supra, at 141, 142.
 {¶ 16} We address each alleged instance of ineffective assistance of counsel individually. First, the appellant contends that he was denied effective assistance of counsel because counsel for the appellant prior to trial failed to file a motion to suppress the identification of the appellant by Dranitsin. The appellant posits this contention on Detective Adornetto's testimony that, after he interviewed Dranitsin, the only information he had about the appellant was his first name, "Igor," and the fact that the identification occurred some three months after the October 25, 2000 incident.
 {¶ 17} We note, when a witness has been confronted with a suspect before trial, due process requires a court to suppress an identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances. State v. Waddy (1992), 63 Ohio St.3d 424, 438, citingManson v. Brathwaite (1977), 432 U.S. 98, 116, 97 S.Ct. 2243, 2254,53 L.Ed.2d 140, 155, and Neil v. Biggers (1972), 409 U.S. 188, 196-198,93 S.Ct. 375, 381-382, 34 L.Ed.2d 401, 410-411. However, no due process violation will be found where an identification does not stem from an impermissibly suggestive confrontation, but is instead the result of observations at the time of the crime. Coleman v. Alabama (1970),399 U.S. 1, 5-6, 90 S.Ct. 1999, 2001, 26 L.Ed.2d 387, 394.
 {¶ 18} Accordingly, we cannot endorse the appellant's argument concerning trial counsel's failure to file a motion to suppress identification. In reviewing the record, the testimony of Dranitsin reflects that he knew the appellant prior to the incident and was readily able to identify the appellant without regard to the photograph identification that Detective Adornetto utilized. At trial, Dranitsin was able to identify the appellant by name as one of the individuals that later arrived at the Babev residence. Tr. 190. Dranitsin was able to identify the appellant by name as one of the individuals holding him captive in the basement of the Babev residence. Tr. 198-199. Further, Dranitsin testified to other encounters with the appellant by name after the incident in question. Tr. 236. Last, Dranitsin testified concerning his knowledge of the appellant by name and his association with the other defendants. Tr. 189-190. Therefore, any subsequent actions by the investigating officers with regard to identification is wholly irrelevant in light of the abundant testimony outlining Dranitsin's intimate familiarity with the appellant.
 {¶ 19} As stated, no due process violation will be found where an identification does not stem from an impermissibly suggestive confrontation, but is instead the result of observation at the time of the crime. Coleman, supra. Clearly, Dranitsin was readily able to identify the appellant as one of the culprits without regard to the photos utilized by the detective. Therefore, trial counsel's failure to file a motion to suppress is irrelevant and did not rise to the level of ineffective assistance.
 {¶ 20} Next, the appellant argues that trial counsel was ineffective by failing to file or make an oral motion for a separate trial from the other eight defendants. The appellant contends that trial counsel's failure to move for a separate trial was prejudicial because evidence was introduced at trial with regard to the abduction of Efimov, an incident in which he was not involved. Therefore, since the appellant did not have any connection with the Efimov incident, he was detrimentally affected by the prejudicial spillover effect of any testimony regarding the Efimov incident.
 {¶ 21} Crim. R. 14 states:
 {¶ 22} "If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires. * * *."
 {¶ 23} In State v. Thomas (1980), 61 Ohio St.2d 223, 225, the Ohio Supreme Court stated, "joinder and the avoidance of multiple trials is favored for many reasons, among which are conserving time and expense, diminishing the inconvenience to witnesses and minimizing the possibility of incongruous results in successive trials before different juries." We note that the appellant was tried together with eight other co-defendants. During the earliest pre-trial conferences, it was the tactic of all defense counsel involved to present a unified theory of defense. This fact is supported, as noted by the State in its brief, in the fact that all nine defense attorneys waived the right to a jury trial on the morning of trial and the fact that not one of the nine defense attorneys made a motion for a separate trial.
 {¶ 24} In reviewing the evidence presented at trial, we cannot conclude that trial counsel for the appellant erred in failing to file a written or oral motion for a separate trial. The evidence reflects that the victim, Dranitsin, was readily able to identify the appellant as one of his captors. Further, offenses committed against both Dranitsin and Efimov, although separate, were committed in nearly identical fashion, including the purpose of the crimes and the manner in which the defendants carried out the crimes. Last, there is no indication in the record that the trial judge had difficulty in discerning the levels of involvement each defendant possessed. This point is reflected in the fact that the defendants were each convicted of different levels of offenses in relation to their participation in each incident.
 {¶ 25} The mere fact that evidence was presented with regard to a separate incident in which the appellant had no direct involvement did not prejudice the appellant because his conviction was based solely on the offense against Dranitsin. The evidence presented clearly reflected the appellant's involvement in the crimes committed against Dranitsin. The direct and substantial evidence presented debilitates that appellant's assertion that the lower court based its finding of guilt upon a cumulation of the evidence presented at trial. See, also, Harringtonv. California (1969), 395 U.S. 250.
 {¶ 26} Last, the appellant asserts that trial counsel erred in failing to make an opening statement and not asking questions throughout trial. In failing to make an opening statement and in failing to ask questions at trial, the appellant contends he was irreparably prejudiced by his trial counsel's failures. Once again, we note that the appellant was tried via a bench trial with eight co-defendants. Prior to trial, the lower court was well versed in the nature of the offenses, as evidence by the numerous pre-trials between the State and counsel for the defendants. Accordingly, because the instant matter was tried to the bench, there was no necessity for an opening statement as in a jury trial. This is further reflected in the fact that all nine attorneys for the defense waived opening statements.
 {¶ 27} Next turning to appellant's allegations that trial counsel failed to ask any questions, we note that the lower court established an order in which each of the counsel for the defendants would be permitted to question witnesses. In reviewing the record, it is clear that when appellant's trial counsel's "turn" to question witnesses arrived, the witness had already been questioned by other defense counsel ad nauseam. To further question would in effect only belabor and repeat testimony already elicited. It would be nonsensical for each defense attorney to repeat questions already posited by other counsel for the sake of asking questions.
 {¶ 28} Simply, the manner in which the appellant asserts the instant assignment of error greatly misconstrues the nature of the trial proceedings. In order to prevail on a claim of ineffective assistance of counsel, the appellant is required to demonstrate that (1) the performance of defense counsel was seriously flawed and deficient and (2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. Stricklandv. Washington, supra.
 {¶ 29} In reviewing the nature of the proceedings and the record below, we cannot conclude that appellant's trial counsel's performance was flawed or deficient, nor can we conclude that the legal proceedings would have been different had defense counsel utilized other tactics. The victim readily identified the appellant as one of his captors, and the victim was able to state the role each assailant played in his abduction. There is simply no evidence to indicate that trial counsel for the appellant erred in any manner at trial. Therefore, the appellant's first assignment of error is without merit.
 {¶ 30} The appellant's second assignment of error states:
 {¶ 31} "II. Appellant's Conviction For Abduction And Assault Was Not Supported By Legally Sufficient Evidence And Is Against The Manifest Weight Of The Evidence."
 {¶ 32} The appellant urges that there is no evidence to support his conviction of abduction and assault.
 {¶ 33} As to the claim of insufficient evidence, we note that when reviewing a challenge to the sufficiency of the evidence, an appellate court must view the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of syllabus, citingJackson v. Virginia (1979), 443 U.S. 307. Thus, a reviewing court will not overturn a conviction for insufficiency of the evidence unless we find that reasonable minds could not reach the conclusion reached by the trier of fact. State v. Treesh (2001), 90 Ohio St.3d 460. Moreover, the credibility of witnesses and the weight attributable to their testimony are primarily matters for the trier of fact who observed the witness in person. State v. Antill (1964), 176 Ohio St. 61; State v. DeHass (1967),10 Ohio St.2d 230.
 {¶ 34} Lastly, in determining if a conviction is against the manifest weight of the evidence, the appellate court reviews the record, weighs the evidence and all reasonable inference, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Martin (1983), 20 Ohio App.3d 172,citing Tibbs v. Florida (1982), 457 U.S. 31. The court should consider whether the evidence is credible or incredible, reliable or unreliable, certain or uncertain, conflicting, fragmentary, whether a witness was impeached and whether a witness had an interest in testifying. State v.Mattison (1985), 23 Ohio App.3d 10. The credibility of a witness is primarily an issue for the trier of fact who observed the witness in person. State v. Antill, supra.
 {¶ 35} As previously stated, the appellant was convicted of abduction and assault. The record reflects substantial evidence against the appellant to support his convictions. The appellant acted in concert with a group of individuals to prevent Dratisin from escaping the Babev residence. In preventing the escape, the appellant, with the aid of others, interrogated Dratisin concerning an "alleged" arson and repeatedly attacked the victim in attempting to ascertain the location of Efimov. There is no question that the appellant was positively identified by Dranitsin as one of his abductors, nor is there any discrepancy as to the role the appellant played in the basement interrogation of Dranitsin.
 {¶ 36} Accordingly, we cannot conclude that the appellant's convictions are against the manifest weight of the evidence or against the sufficiency of the evidence. Granted, the mere presence of an accused at the scene of a crime is not sufficient to prove in and of itself that the appellant is guilty of the crimes charged. See State v. Widner
(1982), 69 Ohio St.2d 267, 269. However, the evidence clearly reflects that the appellant was an active participant in the commission of the crimes, and his conviction accurately reflects this point.
 {¶ 37} The appellant's second assignment of error is not well taken.
Judgment affirmed.
ANN DYKE, P.J., AND JAMES J. SWEENEY, J., CONCUR.