OPINION
{¶ 1} Raul Santiago, defendant-appellant, appeals the judgment of the Franklin County Court of Common Pleas, wherein the court found him guilty of aggravated murder with a firearm specification, in violation of R.C. 2903.01, an unclassified felony.
 {¶ 2} On April 9, 2001, Antonio Phillips (a.k.a. Painter Tone) was shot and killed at a Travelodge Motel in Columbus, Ohio. Several days later, Max Palmer and Stanley Howard telephoned "Crime Stoppers" naming appellant as the person who shot Phillips, and appellant was arrested. On April 20, 2001, appellant was indicted on one count of aggravated murder with a three-year firearm specification. On September 23, 2002, a trial was held. During jury selection, appellant's objection to one of the state's peremptory challenges, pursuant to Batson v. Kentucky (1986),476 U.S. 79, 106 S.Ct. 1712, was overruled. Testifying on behalf of the state were Columbus Police Officer Antonio Jenkins; Columbus Police Detective Mark Henson; Howard, an acquaintance of appellant's and Phillips's; Palmer, an acquaintance of appellant's and Phillips's; Richard Ebin, the Regional Director and Financial Auditor for Cross Country Inns; Columbus Police Detective Michael McCann; Richard Clay, an acquaintance of appellant's and alleged eyewitness; and Vicki Gordon-Smith, a terminal manager for Greyhound. Testifying on behalf of appellant were Martina Magdariaga, appellant's mother, and appellant. On September 26, 2002, the jury convicted appellant of aggravated murder with a three-year firearm specification. Appellant was sentenced to a term of 23 years to life imprisonment. Appellant appeals the judgment, asserting the following four assignments of error:
 {¶ 3} "I. The trial court erred in overruling Appellant's Batson objection, as the State improperly exercised a peremptory challenge to exclude an African-American juror, thereby depriving Appellant of equal protection as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution.
 {¶ 4} "II. The trial court committed plain error in permitting hearsay testimony of alleged conversations with the decedent, thereby depriving Appellant of his right of confrontation in violation of theSixth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution.
 {¶ 5} "III. The trial court committed plain error in repeatedly admitting irrelevant and inadmissible evidence about the `high crime' nature of the location of the offense, thereby depriving Appellant of his right to a fair trial as guaranteed by the United States and Ohio Constitutions.
 {¶ 6} "IV. The failures of Appellant's trial counsel constituted ineffective assistance, thereby depriving Appellant of his rights as guaranteed by the Sixth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution."
 {¶ 7} Appellant argues in his first assignment of error the trial court erred in overruling his objection to the state's peremptory challenge against an African-American juror pursuant to Batson. Under Batson, the state may not use its peremptory challenges during the jury selection process to exclude a member of the venire solely on the basis of race or gender. To establish a prima facie case of purposeful discrimination, a defendant must first establish that: (1) members of a cognizable racial group were peremptorily challenged; and (2) the facts and any other relevant circumstances raise an inference that the prosecutor used the peremptory challenges to exclude jurors on account of their race. State v. Raglin (1998), 83 Ohio St.3d 253, 265, citing State v. Hill (1995), 73 Ohio St.3d 433. If the prima facie case is shown, the burden then shifts to the prosecution to articulate a race-neutral explanation for the challenge. Id. If such race-neutral reasons are offered, the burden shifts back to the defendant to establish the reasons advanced by the prosecution were pretextual, and the trial court must determine whether the opponent has proven purposeful racial discrimination. State v. Hernandez (1992), 63 Ohio St.3d 577, 582. A race-neutral explanation offered by the prosecution need not rise to the level of a challenge for cause. State v. Cook (1992), 65 Ohio St.3d 516.
 {¶ 8} In the present case, we need not determine whether appellant made a prima facie showing of racial discrimination. " `Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot.'" State v. Brock (1996),110 Ohio App.3d 656, 668, quoting Hernandez v. New York (1991),500 U.S. 352, 359, 111 S.Ct. 1859. In the present case, appellant's counsel objected, the prosecutor offered his explanation, and the trial court ruled on the issue. Consequently, we will assume, arguendo, that appellant met the first prong of Batson and proceeded to the second step. We find the prosecution sustained its burden of articulating a race-neutral explanation for the challenge by responding that it struck the African-American juror from the jury pool based upon a criminal trespassing conviction the potential juror had 25 years ago.
 {¶ 9} With regard to the final step explained above, appellant claims the trial court erred in finding that the reason given by the prosecution was not pretextual. Appellant maintains that the challenged peremptory strike by the prosecutor was the state's second peremptory strike to remove an African-American from the jury pool, thereby leaving only Caucasians in the pool. Appellant also asserts the state's reason for excluding the second juror was insufficient because of the remoteness of the criminal conviction, and the juror's assurance that he would be able to be fair to both sides during trial.
 {¶ 10} Based on the record before us, we find nothing to support an inference that the state improperly used its peremptory challenge to exclude the juror based solely on race. The record reflects that the state expressed to the court it excused the African-American juror because he was convicted of criminal trespassing 25 years ago. Removing a juror based on the past criminal history of him or her, or his or her family member, is a valid, race-neutral reason for raising a peremptory challenge. See, e.g., State v. Lipscomb (Dec. 21, 2001), Hamilton App. No. C-000737 (valid to excuse for previous conviction for driving under the influence); State v. Reed (June 12, 1998), Lucas App. No. L-97-1133 (valid to excuse because relatives of jurors had been convicted of crimes); State v. Pattin (July 7, 1992), Lucas App. No. L-91-339 (the African-American juror who was excluded had three brothers who were previously convicted of criminal offenses). This reason demonstrates a concern by the state that the person may have had a negative experience with the prosecutor's office, and might therefore have a bias against the prosecution. We cannot say the remoteness of the past criminal history necessarily renders the prosecutor's explanation or this underlying concern invalid. Further, the prosecutor stated that no other member of the jury pool had any criminal convictions, except traffic violations. The state indicated that, if any other juror had had a criminal past, he would have dismissed him or her as well. We must extend deference to the trial court since this was the stage that the persuasiveness and credibility of the justification offered by the striking party became relevant. Purkett v. Elem (1995), 514 U.S. 765, 768, 115 S.Ct. 1769. The trial court is in a far better position than an appellate court to determine whether the reasons asserted by the prosecutor are based on causes other than racial discrimination. Hernandez, supra. The trial court accepted the state's explanation, and there are no other facts in the record to support appellant's claims that the state's removal of the African-American juror was racially motivated. This race-neutral explanation was sufficient to defeat a Batson challenge, and, accordingly, appellant's first assignment of error is without merit.
 {¶ 11} Appellant argues in his second assignment of error the trial court committed plain error in permitting hearsay testimony of alleged conversations with the decedent, Phillips. Appellant's trial counsel made no objection to the testimony. Failure to object to the introduction of hearsay evidence waives any claim of error except for plain error. State v. Gray (Mar. 28, 2000), Franklin App. No. 99AP-666, following State v. Clemons (1998), 82 Ohio St.3d 438, 444. The doctrine of plain error is limited to exceptionally rare cases in which the error, left unobjected to at the trial court, "rises to the level of challenging the legitimacy of the underlying judicial process itself." See Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, 122. In other words, the plain error rule should not be invoked unless, but for the error, the outcome of the trial would clearly have been otherwise. State v. Cooperrider (1983), 4 Ohio St.3d 226, 227. The application of the rule is to prevent manifest injustice. Id.
 {¶ 12} Pursuant to Evid.R. 801(C), hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is inadmissible, except as otherwise provided by the United States Constitution, the Ohio Constitution, the statute enacted by the General Assembly not in conflict with a rule of the Ohio Supreme Court, hearsay exceptions included within the Ohio Civil Rules of Procedure, or other rules prescribed by the Supreme Court of Ohio. Evid.R. 802.
 {¶ 13} In the present case, appellant asserts that, on direct examination, Howard, Palmer, and Clay testified to hearsay statements made by Phillips. Howard, who is Palmer's roommate, testified that appellant came over to his apartment a day or two after the murder. Howard stated appellant told him and Palmer that Phillips had refused to pay appellant $40 and told appellant, "you might as well kill me." Palmer testified as to the following conversation with appellant:
 {¶ 14} "A. So then [appellant] went into the conversation that Painter Tone [Phillips] had owed him 40 dollars and Painter Tone had left from the hotel, I guess he was waiting for Painter Tone to come back to pay him his 40 dollars. When Painter Tone came back, he asked Painter Tone did he have the 40 dollars and Painter Tone swore, or stated swearing, cussing, told him he wasn't paying him the money. * * *"
 {¶ 15} Clay, who was an acquaintance of appellant's and Phillips's, testified:
 {¶ 16} "Q. You spotted who?
 {¶ 17} "A. Painter Tone.
 {¶ 18} "Q. Okay.
 {¶ 19} "A. And I said, what's going on with you and the guys at the hotel? He said, nothing. I said, well, from my understanding, you owe one of them some money. He said, fuck `em.
 {¶ 20} "Q. You said, you owe the Defendant some money?
 {¶ 21} "A. Yes. He said, fuck `em. I don't owe him shit. I'm like, okay."
 {¶ 22} Appellant contends the above statements constitute hearsay because they are out-of-court statements of Phillips and were offered for the truth of the matter asserted, namely that Phillips had refused to pay appellant a debt. A statement is not hearsay when it is offered into evidence for a purpose other than "to prove the truth of the assertion by the declarant not on the witness stand at the time of the declaration." Staff Note to Evid.R. 801(C). The prosecution did not offer the statements for the truth of what Phillips told appellant. With regard to Howard's testimony, Phillips's statement to appellant that "you might as well kill me" contains no assertion by Phillips that the prosecution desired to have proved as true. With regard to Palmer's testimony, whether Phillips was being truthful as to his intentions of paying appellant was irrelevant to the prosecution's case. A statement is not hearsay if it is admitted to prove that the declarant made it, rather than to prove the truth of its contents. State v. Williams (1988),38 Ohio St.3d 346.
 {¶ 23} Further, with regard to Clay's testimony, clearly Phillips's statement was not being offered for the truth of the matter asserted. Phillips told Clay that he did not owe any money to appellant, which is the exact opposite of the state's theory that Phillips did owe money to appellant. Importantly, even if it had been error for the court to admit the above testimony of Howard, Palmer, and Clay, appellant would be unable to show any prejudice from the admission because appellant himself provided the same testimony; that Phillips had borrowed $20 from him and was supposed to repay him $40. Therefore, we find no error, plain or otherwise, and appellant's second assignment of error is overruled.
 {¶ 24} Appellant argues in his third assignment of error the trial court erred in repeatedly admitting irrelevant and inadmissible evidence about the "high crime" nature of the location of the offense. Because appellant's counsel failed to object to the admission of this testimony, we review it under a plain error standard. Evid.R. 401 defines relevant evidence as any evidence that tends to make the existence of a material fact more or less probable than it would be without that evidence. All evidence that is not relevant is inadmissible. Evid.R. 402. Even when evidence is relevant, however, a trial court must exclude it when "its probative value is substantially outweighed by the danger of unfair prejudice, or confusion of the issues, or of misleading the jury." Evid.R. 403(A).
 {¶ 25} Appellant asserts the repeated references by the prosecutors and witnesses to the high-crime nature of the location where appellant allegedly shot Phillips were irrelevant as to whether or not appellant committed the offense. Appellant points to the testimony of Officer Jenkins, who testified that the neighborhood was a high-crime area with frequent arrests and crack cocaine use; Detective McCann, who testified that most of the people at the scene were crack users with "something to hide"; and Clay, who testified that the Travelodge was a "true hell hole" that was used by crack users and prostitutes. Appellant also points to the closing argument by the prosecutor, during which she said that Clay, Howard, and Palmer all knew about the drugs, stealing, and crime that went on at the Travelodge and in the surrounding area, and that Clay, the victim, and most of the people at the Travelodge lived a pathetic existence.
 {¶ 26} Although under some circumstances, references to an area being a high-crime area may be irrelevant or prejudicial, see State v. Maddox (June 29, 2001), Montgomery App. No. 18389, under the circumstances of this case, we find no error in allowing the testimony. Appellant's own trial counsel also referred to the area of the murder as a high-crime area. Appellant's own references to the area as being a high-crime area may well have been trial strategy in order to discount the veracity of the state's witnesses or an attempt to show that someone else, maybe even one of the state's witnesses, murdered Phillips. As the state suggests, appellant's counsel may have wished to portray the area as a high-crime area to show that the victim was also involved in criminal activity that would have given others a motive to murder him, or that the murder may have been the result of a random act. See State v. Montgomery (May 31, 1996), Montgomery App. No. 15232 (admission of evidence about high-crime activity in an area was not error, given that the defense's own theory was that drugs could have been dropped by someone other than the defendant, that the defense itself elicited testimony about the fact that the area was a high-crime area, that people who were drug addicts walked up and down the street on a daily basis, that most of the arrests in the area were drug or prostitute related, and that the defendant also testified to the fact that many prostitutes and drug dealers were in that area); State v. Whitlow (Mar. 31, 1994), Mahoning App. No. 91 C.A. 9 (the defendant cannot claim testimony elicited by the prosecution that the arrest took place in a high-crime area was irrelevant and inadmissible, while his own counsel also elicited from a police officer the description of the area as being "a pretty bad area" and a "high crime area"). Nevertheless, even if it could be said that such high-crime testimony was not relevant, we conclude it was not prejudicial. See Montgomery; Whitlow; State v. Martin (Mar. 22, 1994), Franklin App. No. 93APA07-988 (although the suggestion that events forming the basis for appellant's drug-abuse conviction took place in a high-crime area was not relevant to that charge, neither was it prejudicial). Therefore, we find no error in the admission of such testimony, much less plain error, and appellant's third assignment of error is overruled.
 {¶ 27} Appellant argues in his fourth assignment of error that his trial counsel was ineffective. To prevail on a claim of ineffective assistance of counsel, a defendant must show both deficient performance and resulting prejudice. Strickland v. Washington (1984), 466 U.S. 668,687, 104 S.Ct. 2052. To demonstrate deficiency, a defendant must show that counsel's representation fell below an objective standard of reasonableness. Id. at 688. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. Id. The adequacy of counsel's performance is reviewed in light of all the circumstances surrounding the trial. Id. Assuming that counsel's performance was ineffective, the defendant must still show that the error had an effect on the judgment. State v. Bradley (1989), 42 Ohio St.3d 136, 142. Reversal is warranted only where the defendant demonstrates that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id.
 {¶ 28} Specifically, appellant asserts that his counsel was ineffective in four ways: (1) failing to file a pretrial motion to suppress the out-of-court identification of appellant; (2) failing to provide evidence that the only alibi witness had no criminal record; (3) repeatedly failing to object to irrelevant and inadmissible testimony about high-crime environment around the Travelodge; and (4) repeatedly failing to object to hearsay testimony offered by the state. With regard to the first ground, appellant contends that trial counsel failed to file a pretrial motion to suppress the out-of-court identification of appellant made by Clay. Appellant contends that, because Clay was the only eyewitness to identify him, a pretrial motion would have permitted a challenge to the reliability of his identification and his veracity. However, it is well-established that a motion to suppress evidence "`is not used to test reliability or weight of the evidence.'" State v. Mengistu, Franklin App. No. 02AP-497, 2003-Ohio-1452, at ¶ 43, quoting State v. Stewart (Dec. 15, 1997), Washington App. No. 96CA18. Further, there is no evidence in the record that Clay was subjected to any suggestive pretrial identification procedure by the police. No due process violation will be found where an identification does not stem from an impermissibly suggestive confrontation, but is, instead, the result of observations at the time of the crime. Coleman v. Alabama (1970),399 U.S. 1, 5-6, 90 S.Ct. 1999. In the present case, it appears as though Clay simply told police several days after the incident that appellant was the person he saw shoot Phillips. Clay had known appellant for about one month prior to the murder, and did not need any identification procedure to inform police of appellant's identification. In addition, both the prosecutor and defense extensively explored the reliability of Clay's eyewitness testimony, questioning him on his drug use, criminal past, vantage point, and parole violations. There were also two other witnesses who testified that appellant told them he had shot Phillips, thereby lending credibility to the reliability of Clay's identification. Accordingly, appellant's argument concerning trial counsel's failure to file a motion to suppress identification is not well-taken.
 {¶ 29} Appellant next contends that his trial counsel was ineffective in failing to provide evidence that the only alibi witness had no criminal record. Appellant's mother, Magdariaga, testified at trial that appellant was with her at the time of the murder. However, while neither the prosecution nor appellant's counsel ever mentioned any prior record of appellant's mother, both the prosecution and the defense did discuss the prior records of several other witnesses. The prosecution also at no time implied that Magdariaga had a criminal record. Under such circumstances, a reasonable jury would presume that Magdariaga had no prior record. We cannot find that appellant's counsel was ineffective for eliciting such testimony from Magdariaga in this case. This argument is without merit.
 {¶ 30} Appellant next asserts that his trial counsel was ineffective for repeatedly failing to object to irrelevant and inadmissible testimony about the high-crime environment around the Travelodge. We have already found no error with regard to this issue under our discussion of appellant's third assignment of error. Trial counsel's own reference to the area as a high-crime area may have been a part of trial strategy. See State v. Collier (Aug. 20, 1998), Franklin App. No. 97APA11-1459 (counsel's failure to object to numerous references to the neighborhood as a high drug-dealing area was not ineffective assistance of counsel because it was trial strategy for counsel to argue the drugs found could have been from somebody else); see, also, Montgomery, supra. Therefore, this argument is not well-taken.
 {¶ 31} Appellant also contends that his trial counsel was ineffective for repeatedly failing to object to hearsay testimony offered by the state. We have already addressed this issue under appellant's second assignment of error and found the portions of Howard's, Palmer's, and Clay's testimony cited by appellant were not impermissible hearsay. Thus, we cannot find his trial counsel was ineffective for failing to object to this testimony. Further, we find no cumulative error as a result of the combined effect of the alleged instances of ineffective assistance of counsel. Therefore, appellant's fourth assignment of error is overruled.
 {¶ 32} Accordingly, we overrule appellant's four assignments of error. The judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
TYACK and BOWMAN, JJ., concur.