[Cite as *State v. Mauder*, 2016-Ohio-7114.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio

       Appellee

v.

Joshua Lee Mauder

       Appellant

Court of Appeals Nos. L-15-1171
L-15-1172

Trial Court Nos. CR0201501602
CR0201501266

**DECISION AND JUDGMENT**

Decided: September 30, 2016

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Rebecca A. Facey, Assistant Prosecuting Attorney, for appellee.

Mollie B. Hojnicki-Mathieson, for appellant.

* * * * *

**SINGER, J.**

**{¶ 1}** Appellant, Joshua L. Mauder, appeals the June 11, 2015 judgment of the

Lucas County Court of Common Pleas convicting him of two counts of domestic

violence in violation of R.C. 2919.25(A) and (D)(3), felonies of the fourth degree, and

one count of aggravated burglary in violation of R.C. 2911.11(A)(1), a felony of the first degree, in this consolidated appeal. For the reasons that follow, we affirm.

## Assignments of Error

{¶ 2} Appellant sets forth the following assignments of error:

1. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPRESS.

2. THE TRIAL COURT ERRED WHEN IT GRANTED THE STATE'S MOTION FOR JOINDER.

3. APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

4. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS.

5. THE TRIAL COURT ERRED WHEN IT IMPOSED CONSECUTIVE SENTENCES.

6. APPELLANT WAS DENIED A FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT.

## Background Facts

{¶ 3} Appellant was charged following three incidents. The first occurred January 28, 2015. Appellant was living with the victim. The victim testified appellant woke her up and punched her three times, causing her lip to bleed. This occurred within

2.

their apartment. The police were called but the couple left before they arrived. The abuse allegedly continued as the couple walked to McDonald's. Although the victim denied this, a witness, T.F., testified to seeing the abuse in public.

{¶ 4} After arriving at McDonald's, appellant returned to their apartment but the victim stayed because her mother was picking her up. The victim's mother, the responding officer, and T.F. all testified to observing the victim's beaten face. Appellant was arrested and indicted for domestic violence in case No. CR0201501266. Appellant posted bond February 4, 2015. After release, appellant and the victim moved into appellant's grandmother's house.

{¶ 5} On February 20, 2015, appellant and the victim were in another physical altercation. Appellant punched her in the forehead. After this, the victim decided she wanted to escape appellant and the abuse. The victim called her parents, who lived within walking distance, and asked them to gather some of her clothes. This request was a cover for her plan to "take a break, get away." In response to her request, her father said there would be a box on the porch. When she arrived, she entered an enclosed porch to retrieve the box. Appellant joined her but was not close behind because he was not welcomed in the home. As the victim exited the porch through the screen door, she handed the box to appellant. As appellant began to walk away from the porch, she went back inside the enclosed porch and locked the screen door behind her.

{¶ 6} Realizing the victim's attempt to get away, appellant tore open the screen door and wrestled the victim to the floor. Appellant then raised his hand to strike her.

3.

After hearing the commotion, the victim's father grabbed his bat and entered the porch. Just as appellant's hand was reaching back to strike the victim, the father struck appellant with his bat. Appellant then left the porch and premises altogether. Appellant was later arrested and indicted for domestic violence and aggravated burglary in case No. CR0201501602.

{¶ 7} Appellant entered pleas of not guilty to all charges in both cases. On April 13, 2015, appellant moved to suppress evidence related to the identification of appellant by witness, T.F., arguing the identification was "inherently unreliable" because it resulted from an "unnecessarily suggestive" photo array. On April 14, 2015, the state requested joinder of the cases. Appellant argued joinder was unduly prejudicial. The trial court granted the state's request for joinder and denied appellant's request for suppression on May 7, 2015. The consolidated cases proceeded to joint trial by jury.

{¶ 8} The trial took place between May 26-28, 2015. Notably, during voir dire, the state questioned the jurors regarding their thoughts on domestic violence. The trial court interrupted and requested a sidebar to express its concerns and sustain an objection. Ultimately, appellant was found guilty on all counts on May 28, 2015. Sentences were imposed June 11, 2015.

{¶ 9} For case No. CR0201501266, appellant was ordered to serve 17 months for domestic violence. For case No. CR0201501602, appellant was ordered to serve seven years for aggravated burglary and 14 months for the second domestic violence conviction. The sentences in case No. CR0201501602 were ordered to be served

4.

consecutively to each other and to the sentence imposed for No. CR0201501266. The trial court's judgment was journalized and timely notices of appeal were filed June 22, 2015.

**Assignment of Error No. 1**

{¶ 10} In the first assignment of error, appellant argues the trial court's denial of his motion to suppress T.F.'s identification violated his right to a fair trial because the procedure allegedly caused irreparable misidentification. Appellee contends the trial court properly denied suppression because the photo array was neither unduly suggestive nor unreliable.

{¶ 11} "[A]ppellate review of a ruling on a motion to suppress presents a mixed question of law and fact." *State v. Johnson*, 6th Dist. Lucas No. L-13-1032, 2014-Ohio-4339, ¶ 8. "[T]he trial court assumes the role of the trier-of-fact and is therefore in the best position to resolve factual questions and evaluate the credibility of a witness." *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). Consequently, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *State v. Guysinger*, 86 Ohio App.3d 592, 594, 621 N.E.2d 726 (4th Dist.1993).

{¶ 12} Suppression of an out-of-court identification occurs if the procedure was "unnecessarily suggestive of the suspect's guilt" and "unreliable under all the circumstances." *See State v. Waddy*, 63 Ohio St.3d 424, 438, 588 N.E.2d 819 (1992); *Neil v. Biggers*, 409 U.S. 188, 196-198, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). To be

5.

suppressed, there must be a "substantial likelihood of irreparable misidentification." *Simmons v. U.S.*, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). However, no due process violation occurs when the identification was "the result of observations at the time of the crime." *Coleman v. Alabama*, 399 U.S. 1, 5-6, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970).

{¶ 13} R.C. 2933.83(B) "requires any law enforcement agency that conducts live and photo lineups to adopt 'specific procedures' for conducting the lineups." *See Johnson* at ¶ 9-12. "Such procedures must provide, at minimum, the use of a 'blind or blinded' administrator for the array. *Id.*, quoting R.C. 2933.83(B)(1). Blind or blinded administrators are defined in R.C. 2933.83(A) as follows:

(2) "Blind administrator" means the administrator does not know the identity of the suspect. "Blind administrator" includes an administrator who conducts a photo lineup through the use of a folder system or a substantially similar system. (3) "Blinded administrator" means the administrator may know who the suspect is, but does not know which lineup member is being viewed by the eyewitness. "Blinded administrator" includes an administrator who conducts a photo lineup through the use of a folder system or a substantially similar system.

{¶ 14} This court has previously addressed an analogous claim. *See State v. Walker*, 6th Dist. Lucas No. L-07-1156, 2008-Ohio-4614, ¶ 30. In *Walker*, we held the "photo array and presentation was admissible since the evidence was neither unduly

6.

suggestive nor unreliable." *Id*. at ¶ 37. First, the *Walker* array and presentation were not "unduly suggestive" because the characteristics and composition of suspects were based on the witness's description. *Id*. at ¶ 36. All the men were presented and looked similar, including all being African-American, male, and having facial hair. *Id*. at ¶ 37. *Id*. Second, the array and presentation were not "unreliable" because, despite similarities, the witness did not hesitate in identifying the suspect. *Id*. The administering officer testified the witness had a "moment of recognition" and "unequivocally" identified Mr. Walker. *Id*. The witness had no prior knowledge, had good eyesight, viewed the suspect with intent of later identifying him, and had a memorable experience which supported her identification despite four days being between the incident and identification. *Id*. Accordingly, the "totality of the circumstances" weighed in favor of affirming the trial court's denial of suppression. *Id*. at ¶ 37.

{¶ 15} Similar to *Walker*, the photo array and presentation here were neither unduly suggestive nor unreliable. First, the photo array was not unduly suggestive because although the confrontation occurred four months after the crime, the witness made an immediate positive identification. The officer presented six photos of men who matched the witness's description. The men all had facial hair, were Caucasian, and seemingly had facial tattoos covered up. The blind administrator, responsible for the presentation, was experienced and consistent, and the procedure was in accordance with R.C. 2933.83. The officer stated there was no way he or the witness knew which photo was appellant's.

7.

{¶ 16} Second, the identification of appellant was not unreliable because it was the "result of [T.F.'s] observations at the time of the crime." *Coleman*, 399 U.S. at 5-6, 90 S.Ct. 1999, 26 L.Ed.2d 387. Here, the witness testified to seeing appellant punch the victim in broad daylight. Further, the witness testified that he viewed the abuse for 15 to 20 seconds while calling 911. Therefore, because the photo array and identification were not unduly suggestive or unreliable under the totality of the circumstances, we hold the trial court did not err in denying appellant's motion to suppress. Accordingly, appellant's first assignment of error is not well-taken.

### Assignment of Error No. 2

{¶ 17} In the second assignment of error, appellant argues joinder of his cases was improper because it prejudiced his right to a fair trial by allegedly allowing the jury to develop an unfavorable impression of his character. Appellee contends joinder was proper because it conserved judicial resources, diminished inconvenience to witnesses, and did not prejudice appellant's right to a fair trial.

{¶ 18} Under Crim.R. 13, a trial court may order two or more indictments to be tried together if the offenses could have been joined in a single indictment. *Accord State v. Gibson*, 6th Dist. Lucas Nos. L-13-1222, L-13-1223, 2015-Ohio-1679, ¶ 24. Under Crim.R. 8(A), two or more offenses may be joined in one indictment if they are (1) of the same or similar character, or (2) are based on the same act or transaction, or (3) are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or (4) are part of a course of conduct. *Id*. at ¶ 24. *See also* R.C. 2941.04.

8.

{¶ 19} Because joinder of indictments for a single trial is favored for judicial economy, the defendant bears the burden of claiming prejudice to prevent the joinder and providing sufficient information to weigh the right to a fair trial against the benefits of joinder. *State v. Newman*, 6th Dist. Erie Nos. E-11-065, E-11-066, 2013-Ohio-414, ¶ 17, citing Crim.R. 14; *State v. Torres*, 66 Ohio St.2d 340, 421 N.E.2d 1288 (1981), syllabus. Whether to try two cases separately or jointly is within the discretion of the trial court. *State v. Bradley*, 6th Dist. Erie No. E-13-013, 2015-Ohio-395, ¶ 9. An abuse of discretion occurs where the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 20} To prevail on a claim that the trial court erred in denying requested severance, an appellant has the burden of demonstrating: (1) his rights were prejudiced, (2) at the time of the motion to sever sufficient information was provided to weigh the considerations favoring joinder against the right to a fair trial, and (3) the court abused its discretion in refusing to separate the charges. *State v. Schaim*, 65 Ohio St.3d 51, 59, 600 N.E.2d 661 (1991), citing *Torres* at the syllabus. "Ohio appellate courts routinely find no prejudicial joinder where the evidence is presented in an orderly fashion as to the separate offenses or victims without significant overlap or conflation of proof." *State v. Robinson*, 6th Dist. Lucas No. L-09-1001, 2010-Ohio-4713, ¶ 51.

{¶ 21} Here, there was no material jury confusion on record, no problematic overlap in testimony, and no switching attention or otherwise confusing conduct by the

9.

state. Careful review of the record reveals the state presented witnesses and evidence orderly, clearly, and chronologically according to the dates and times of the incidents. Therefore, because the evidence relating to each incident was straightforward and easily separable, we hold the trial court did not abuse its discretion when joining trials. Accordingly, appellant's second assignment of error is not well-taken.

## Assignment of Error No. 3

{¶ 22} In the third assignment of error, appellant argues the evidence weighs heavily against his convictions, the jury lost its way, and a miscarriage of justice occurred when the jury found him guilty. Appellee contends appellant's convictions are amply supported by the manifest weight of the evidence and the record supports the verdicts.

{¶ 23} The standard of review for manifest weight is the same in a criminal case as in a civil case, and an appellate court's function is to determine whether the greater amount of credible evidence supports the verdict. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12; *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "A manifest weight of the evidence challenge contests the believability of the evidence presented." (Citation omitted.) *State v. Wynder*, 11th Dist. Ashtabula No. 2001-A-0063, 2003-Ohio-5978, ¶ 23. The appellate court, as if the "thirteenth juror" must review the record, weigh the evidence and all reasonable inferences drawn from it, consider the witnesses' credibility and decide, in resolving any conflicts in the evidence, whether the trier-of-fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial

10.

ordered." *State v. Prescott*, 190 Ohio App.3d 702, 2010-Ohio-6048, 943 N.E.2d 1092, ¶ 48 (6th Dist.), citing *Thompkins* at 387.

### First Domestic Violence Conviction

{¶ 24} Appellant argues the evidence does not support the domestic violence conviction, stemming from the January 28 incident, because the only evidence is the misidentification of the witness and the self-serving statements from the victim, and therefore, the jury lost its way in convicting him. Appellee contends testimony from the victim, the victim's mother, the witness T.F. and officers amply support this conviction.

{¶ 25} R.C. 2919.25(A) states, "No person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2919.25(D)(3) adds an aggravating circumstance: "if the offender previously has pleaded guilty to or been convicted of domestic violence," then, "a violation of division (A) or (B) of this section is a felony of the fourth degree."

{¶ 26} Here, the victim testified to cohabitating with appellant January 28, 2015. She said he woke her up and hit her, causing her lip to bleed. Her mother testified and corroborated these facts. In addition, the police officer's testimony also corroborated the date and time of the incident, as well as the physical condition of the victim. Finally, the record contains evidence that appellant was also convicted of domestic violence on August 5, 2005, in case No. CRB-04-07635-0101. Therefore, we hold that the jury did not lose its way, and appellant's first domestic violence conviction is not against the manifest weight of the evidence.

11.

## Second Domestic Violence Conviction

{¶ 27} Appellant argues the evidence does not support the domestic violence conviction, stemming from the February 20 incident, because the only evidence is the self-serving statements from the victim and her father, and therefore, the jury lost its way in convicting him. Appellee contends testimony from the victim and the victim's parents, along with photos of the injuries, amply support this conviction.

{¶ 28} Regarding the second domestic violence conviction, the victim testified that on the morning of February 20, 2015, appellant punched her in the forehead. This abuse took place at his grandmother's home, where the couple resided. Thus, we do not find that this is the exceptional case where the conviction is against the manifest weight of the evidence.

## Aggravated Burglary Conviction

{¶ 29} Appellant argues the evidence does not support the aggravated burglary conviction, stemming from the February 20 incident, because the only evidence is the self-serving statements from the victim and her father, and therefore, the jury lost its way in convicting him. Appellee contends testimony from the victim and the victim's father amply support this conviction.

{¶ 30} R.C. 2911.11(A)(1) pertinently states:

> No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of

the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if the offender inflicts, or attempts or threatens to inflict physical harm on another.

{¶ 31} For purposes of R.C. 2911.11(A), "trespass" is defined as knowingly entering or remaining on the land or premises of another without permission. *See* R.C. 2911.21(A)(1). Moreover, an "occupied structure" means any house, or any portion thereof, which at the time of the trespassing is "maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not any person is actually present." *See* R.C. 2909.01(C)(1).

{¶ 32} Here, the victim and her father testified appellant tore open the door to the father's porch, where appellant was not welcome, and wrestled the victim to the ground and raised his hand to strike her. Thus, we hold that appellant's conviction for aggravated burglary is not against the manifest weight of the evidence. Consequently, the third assignment of error is not well-taken.

## Assignment of Error No. 4

{¶ 33} In the fourth assignment of error, appellant argues he was deprived of effective assistance of counsel because his appointed counsel rarely objected at trial and the cumulative effect of counsel's failure to do so violated his due process rights and right to a fair trial. Appellee contends the lack of objections neither amounted to professional unreasonableness nor sufficiently prejudiced appellant's rights.

13.

{¶ 34} In evaluating ineffective assistance of counsel claims, the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." *State v. Hester*, 45 Ohio St.2d 71, 341 N.E.2d 304 (1976), paragraph four of the syllabus; *see also Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). A court must determine "whether there has been a substantial violation of any of defense counsel's essential duties to his client" and "whether the defense was prejudiced by counsel's ineffectiveness." *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). To show prejudice, the defendant must prove "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus.

{¶ 35} Here, appellant has not proven the cumulative effect of his counsel not objecting to "hearsay, speculation, character of the accused and other inappropriate evidence" had any prejudicial effect. To be specific, appellant fails to point to evidence in the record which absent its admission would have changed the guilty verdict. Appellant's brief highlights several portions of the trial transcript; however, a careful review of the record and transcripts reveals only harmless hearsay, harmless speculation, or other harmless errors, at best.

{¶ 36} For instance, the transcript reflects the victim testifying to what her dad said to the detective prompting the officer to come speak with the victim; the victim testifying to being asked to marry by appellant; the victim testifying to what her father

said to her about not being welcome inside the house; the victim speculating as to why her parents did not want her inside their house; and the victim speculating as to where appellant was prior to him turning and ripping the porch door open. Given the totality of the evidence on record, these alleged errors are harmless.

{¶ 37} In short, we are not convinced "were it not for counsel's errors the result of the trial would have been different." *See Bradley*. We hold appellant was not denied effective assistance. Accordingly, the fourth assignment of error is not well-taken.

## Assignment of Error No. 5

{¶ 38} In the fifth assignment of error, appellant argues the trial court erred by imposing consecutive sentences because the charges stemming from February 20 resulted from a single incident. Appellee contends consecutive sentences were properly imposed because the trial court met R.C. 2929.14 standards.

{¶ 39} As articulated in *State v. Tammerine*, 6th Dist. Lucas No. L-13-1081, 2014-Ohio-425, ¶ 11:

> R.C. 2953.08(G)(2) establishes that an appellate court may increase,
> reduce, modify, or vacate and remand a dispute sentence if it clearly and
> convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings
> under division (B) or (D) of section 2929.13 (B) or (D), division (B)(2)(e)

or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

**{¶ 40}** Relevant here, the Supreme Court of Ohio has held: "[T]o impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, syllabus. R.C. 2929.14(C)(4)(c) provides:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> * * *
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 41} Here, a review of the record reveals the trial court properly found imposing consecutive sentences was necessary to protect the public from future crime, was to punish appellant, and was not disproportionate to the seriousness of appellant's conduct and the danger he posed. The court explicitly stated a short prison term "would demean the seriousness of the offense" and would "not adequately protect the public." The trial court also noted how appellant's propensity for violence and criminal record dated back to 1996, including nine felony convictions and 14 misdemeanor convictions. These findings satisfy R.C. 2929.14(C)(4)(c), and the imposed consecutive sentences were neither "disproportionate to the seriousness of appellant's conduct nor to the danger he poses." *See*, *e.g.*, *State v. Owens*, 6th Dist. Lucas No. L-15-1215, 2016-Ohio-3092, ¶ 33-34.

{¶ 42} Accordingly, the record does not support that the trial court erred in imposing consecutive sentences. The fifth assignment of error is not well-taken.

### Assignment of Error No. 6

{¶ 43} In the sixth assignment of error, appellant argues he was denied a fair trial due to the state's alleged indoctrination of the jury by misplaced comments about domestic violence and common tendencies of domestic violence victims. Appellee contends the remarks gauged potential jurors and did not prejudice appellant.

{¶ 44} For prosecutorial misconduct to exist, the prosecutor's remarks must be improper and prejudicial. *See State v. Anderson*, 6th Dist. Lucas Nos. L-01-1239, L-01-1248, 2004-Ohio-1188, ¶ 28, citing *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293

17.

(1990). To be grounds for reversal the remarks must "depriv[e] the defendant of a fair trial." *State v. Papp*, 64 Ohio App.2d 203, 211, 412 N.E.2d 401 (9th Dist.1978). An appellant "waives all but plain error by failing to object at trial." *State v. Baker*, 6th Dist. Lucas No. L-03-1026, 2004-Ohio-5894, ¶ 14. "Under the plain error doctrine, reversible error occurs only if 'but for the error, the outcome of the trial clearly would have been otherwise.'" *Id.*, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus.

{¶ 45} Here, appellant failed to show absent the state's remarks he would have prevailed. Appellant took issue with the state discussing domestic violence, including the tendency of victims and its status as a problem in the community. Specifically, the state said, "Now we talked a little bit about domestic violence. You know of course some people know some people who have been the victims, it is all too common problem in our community, and so I want to talk a little bit more about this particular crime and what people's thoughts and feelings are about it." The state continued until the trial court interrupted and requested a sidebar. Appellant's counsel never objected. At sidebar the court said, "Counsel, what is the relevancy of how this affects the community? They aren't judging the community standard. There's been no objection [from appellant's counsel,] but it seems to be a little inflammatory[.]" After the expressed concerns, the remarks discontinued.

{¶ 46} Appellant now asserts it was plain error for the jury to hear the remarks, as they allegedly amounted to an egregious indoctrination. However, these remarks were

18.

only general questions and comments about domestic violence, which we find "did not deprive the defendant of a fair trial." *Anderson* at ¶ 31. Further, this line of questioning was discontinued, albeit by the trial court. We therefore hold there was no plain error.

{¶ 47} Accordingly, the outcome would not have been different absent the remarks and appellant fails to show he was substantially prejudiced. The sixth assignment of error is not well-taken.

## Conclusion

{¶ 48} For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Arlene Singer, J.

James D. Jensen, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE